# HAMMOND PACKING COMPANY v. STATE OF ARKANSAS.

## ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No, 54. Argued February 24, 25, 1908.—Decided February 23, 1909.

The right of a State to prevent foreign corporations from continuing to do business within its borders, is the correlative of its right to exclude them therefrom; and, as this power is plenary, the State, so long as no contract is impaired, may exert it from consideration of acts done in another jurisdiction.

If the power exists to revoke a permit, the question of motive is immaterial for the purpose of determining the constitutionality of the legislative action exerting the power.

The difference between the extent of the power which the State may exert over the doing of business within its borders by an individual, and that which it can exercise as to corporations, furnishes a distinction authorizing a classification between the two which does not violate the equal protection clause of the Fourteenth Amendment.

Where, as in this case, penal provisions as to individuals are separable, and the state court has so construed the statute, any lack of constitutional authority to enact the statute as to individuals would not render the statute unconstitutional as to corporations.

The chartered right of a corporation to do business does not operate to deprive the State of its police power, and the franchise to do business is qualified by the duty to do so conformably to lawful and proper police regulations thereafter enacted.

The claim of an irrepealable contract cannot be predicated upon a contract which is repealable; and, where the reserved power to repeal, alter and amend charters is only to be exercised without injustice, it is within the province of the state court to determine whether it has been so exercised, and its decision cannot be reviewed by this court unless a contract has been impaired or some other and fundamental right within the protection of the Federal Constitution has been denied.

Where the state court has decided that the penal provisions of a statute relate to both domestic and foreign corporations, a foreign corporation cannot claim that the contract between it and the State admitting it, on payment of the franchise tax, to do business on the same

terms as a domestic corporation has been impaired by the revocation of its permit for violation of such statute. *Am. Smelting Co.* v. *Colorado,* 204 U. S. 403, distinguished.

A state statute requiring corporations to produce books and papers which has been construed by the highest court of the State to the effect that its requirements are satisfied by a *bona fide* effort to comply with its provisions or a reasonable showing of inability to comply therewith is not an arbitrary and unjust exercise of authority repugnant to the due process clause of the Fourteenth Amendment, and so held as to such provisions in the Arkansas Anti-Trust Law.

Relief cannot be afforded by this court to one who violates the provisions of a state statute from an erroneous conception of what the statute requires.

Under the visitorial powers of a State over corporations doing business within its borders it is competent for it to compel such corporations to produce their books and papers for investigation and to require the testimony of their officers and employés to ascertain whether its laws have been complied with, and this power extends to the production of books and papers kept outside of the State, and a statute requiring such production does not amount to an unreasonable search or seizure or a denial of due process of law. *Consolidated Rendering Co.* v. *Vermont,* 207 U. S. 541.

*Quære* and not decided whether the due process clause of the Fourteenth Amendment embraces in its general terms a prohibition of unreasonable searches or seizures.

An order made pursuant to statute in a suit for penalties for violations of a state anti-trust law requiring a corporation to produce books and papers does not deny due process of law because thereunder the State may elicit proof not only as to the liability of the corporation but also proof in its possession relevant to its defense. *Consolidated Rendering Co.* v. *Vermont,* 207 U. S. 541; *Hale* v. *Henkel,* 201 U. S. 43.

If a state statute requiring the production of papers is constitutional the motive of the State for acting thereunder is immaterial.

Statutory regulations dealing exclusively with persons or property not within the borders of the State, if otherwise valid, are not unconstitutional as denying equal protection of the law. *Central Loan & Trust Co.* v. *Campbell,* 173 U. S. 84.

The wider scope of the power of the State over corporations than over individuals affords a basis for separate classification as to the production of books and papers.

A state statute requiring corporations to produce, and creating a presumption of fact as to bad faith and untruth of a defense by reason

of suppression of material evidence, does not deny due process of law; nor does an order of the court based on such a statute striking out the answer of a defendant corporation which has refused to produce material evidence deny due process and condemn him unheard. *Hovey* v. *Elliott*, 167 U. S. 409, in which the order striking the answer from the files was in the nature of a punishment for contempt, distinguished.

81 Arkansas, 519, affirmed.

THE facts, which involve the constitutionality of certain provisions of the anti-trust statute of the State of Arkansas and the validity of proceedings in the courts of the State thereunder, are stated in the opinion.

*Mr. John G. Johnson* and *Mr. W. E. Hemingway*, with whom *Mr. George B. Rose* and *Mr. Ralph Crews* were on the brief, for plaintiff in error:

Section 1 of the act in question, as construed by the Supreme Court of the State of Arkansas, impairs the obligation of the contract between the defendant as a foreign corporation, and the State, whereby the defendant was permitted to do business within the State; and is therefore violative of § 10, Art. I of the Constitution of the United States. *American Smelting & Refining Co.* v. *Colorado*, 204 U. S. 103; Concurring opinion of Mr. Justice Wood, 100 S. W. Rep. 1099; *Hartford Ins. Co.* v. *State*, 89 S. W. Rep. 42; § 11, art. 12, constitution of Arkansas; §§ 824, 825, 826, 827 and 828, Kirby's Digest Statutes of Arkansas; 15 A. & E. Ency. Law (2d ed.), p. 1049; *Commonwealth* v. *Proprietors of New Bedford Bridge*, 2 Gray, 339; *Washington Bridge Co.* v. *State*, 18 Connecticut, 53; *N. M. Co.* v. *Coon*, 6 Pa. St. 379; *State Tax on Foreign Held Bonds*, 15 Wall. 320; *Gordon* v. *Appeal Tax Court*, 3 How. 133; *Wendover* v. *Lexington*, 15 B. Monroe, 258; *Attorney General* v. *Bank of Charlotte*, 4 Jones Equity (N. C.), 293; *Miller* v. *State*, 15 Wall. 497; *Coast Line R. R. Co.* v. *Savannah*, 30 Fed. Rep. 646; *Erie R. R.* v. *Pennsylvania*, 153 U. S. 628; *C., R. I. & P. Ry. Co.* v. *Ludwig, Secy. of State*, 156 Fed. Rep. 152; *Commonwealth* v. *M. & O. R. R. Co.*, 64 S. W. Rep. 452; *Seaboard Air Line R. R. Co.* v.

*R. R. Com. of Alabama,* 155 Fed. Rep. 792; *British Am. Mtg. Co.* v. *Jones,* 56 S. E. Rep. 983.

Section 1 of the act in question legislates relating to transactions occurring beyond the limits of the State of Arkansas, and is therefore extra-territorial, and its enforcement would constitute a taking of the property of defendant without due process of law, and constitute a denial to it of the equal protection of the law, contrary to the terms of the Fourteenth Amendment. *Casey* v. *State,* 53 Arkansas, 334; Cooley's Const. Lim. 176; *People* v. *Butler St. Foundry Co.,* 201 Illinois, 236; *Chicago Wall Paper Mills* v. *General Paper Co.,* 147 Fed. Rep. 491; *Cargyle Co.* v. *Minnesota,* 182 U. S. 452; *Carroll* v. *Greenwich Ins. Co.,* 199 U. S. 409; *Santa Clara Co.* v. *So. Pac. Ry.,* 118 U. S. 394; *Charlotte &c. Ry. Co.* v. *Gibbs,* 142 U. S. 386; *Covington &c. Co.* v. *Stanford,* 164 U. S. 578; *Mo. Pac. Ry.* v. *Mackey,* 127 U. S. 209; *N. Y. Life Ins. Co.* v. *Smith,* 41 S. W. Rep. 687; *Baltimore &c. Ry.* v. *Read,* 62 N. E. Rep. 488.

So much of § 8 of the act as purports to authorize the court to make an order for the production of witnesses, books and papers, is unconstitutional and void, and did not warrant the making of an order in pursuance of its provisions.

It subjects the defendant to unreasonable search and seizure of its books, papers and documents, and thereby violates the Fourth and Fourteenth Amendments to the Constitution of the United States.

It calls upon the defendant to produce evidence to be used against itself in a penal action, and thereby violates the Fifth and Fourteenth Amendments to the Constitution of the United States.

It denies to the defendant the equal protection of the law, and constitutes a taking of its property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States. *Boyd* v. *United States,* 116 U. S. 617; *Monongahela &c. Co.* v. *United States,* 148 U. S. 325; *Interstate Commerce Com.* v. *Brimson,* 154 U. S. 447, 479; *Hale* v. *Henkel,* 201 U. S. 43; *Logan* v. *Pa. Ry. Co.,* 132 Pa. St. 403;

Cooley's Const. Lim. 368 *et seq.; Lester* v. *People*, 150 Illinois, 408; *Rothwill* v. *Bank*, 20 Hun, 517; *Commonwealth* v. *Lottery Tickets*, 5 Cush. 369; *Sanford* v. *Nichols*, 13 Massachusetts, 286; *Lee* v. *Angas*, L. R. 2 Eq. 39; *Ex parte Brown*, 72 Missouri, 83; *Tharp* v. *Paige*, 66 Arkansas, 229; *State* v. *Slamon*, 73 Vermont, 212; *People* v. *Western Ins. Co.*, 40 Ill. App. 428; *Boyle* v. *Schmidtland*, 146 Pa. St., 255; *Gunn* v. *Railway*, 50 N. E Rep. 132; *Gulf &c. Railway* v. *Ellis*, 165 U. S. 150; *Mo. Pac. Ry.* v. *Mackey*, 127 U. S. 209; *Central &c.* v. *Board of Trade*, 125 Fed. Rep. 468; 3 Wigmore on Evidence, § 2259; *State* v. *Simmons Hardware Co.*, 18 S. W. Rep. (Mo.) 1125; Cooley's Const. Lim. 370; *Counselman* v. *Hitchcock*, 142 U. S. 547; *Brown* v. *Walker*, 161 U. S. 591.

When the State goes into the courts for the assertion of its rights it goes upon an equality with other litigants. *State* v. *Morgan*, 52 Arkansas, 150; *Brent* v. *Bank*, 10 Pet. 596; *The Siren*, 7 Wall. 159; *United States* v. *Beebe*, 17 Fed. Rep. 41.

So much of § 9 of the act as purports to authorize the court to strike from the files the pleadings of the defendant upon its failure to comply with the terms of the order entered pursuant to § 8, is unconstitutional and void, and the judgment so rendered constitutes a taking of the property of the defendant without due process of law, and a denial to it of the equal protection of the laws, in violation of the terms of the Fourteenth Amendment to the Constitution of the United States. *Mc-Veigh* v. *United States*, 11 Wall, 259; *Windsor* v. *McVeigh*, 93 U. S. 274; *Hovey* v. *Elliott*, 167 U. S. 444; *Boyd* v. *United States*, 116 U. S. 617; *Orient Insurance Co.* v. *Daggs*, 172 U. S. 557; *Holden* v. *Hardy*, 169 U. S. 366; *Bradstreet* v. *Neptune Ins. Co.*, 3 Sumn. 601; *Adams* v. *Postal Telegraph Co.*, 155 U. S. 689, 698; *Galpin* v. *Page*, 18 Wall. 330; *Lasere* v. *Rochereau*, 17 Wall. 437; *Simon* v. *Croft*, 182 U. S. 427; Cooley's Const. Lim. (6th ed.) 452; *Myers* v. *Shields*, 61 Fed. Rep. 718; *Burton* v. *Platter*, 53 Fed. Rep. 901; *Zeigler* v. *R. R. Co.*, 58 Alabama, 594; *State ex rel.* v. *Billings*, 55 Minnesota, 473; *Foley* v. *Foley*, 52 Pac. Rep. 122; *Younger* v. *Superior Court*, 69 Pac. Rep. 485; *Mc-*

*Clatchey* v. *Superior Court*, 51 Pac. Rep. 696; *Greig* v. *Ware*, 55 Pac. Rep. 163; *State* v. *Clancy*, 61 Pac. Rep. 897; *Hebb* v. *County Court*, 37 S. E. Rep. 678; *Underwood* v. *McVeigh*, 23 Grattan (Va.), 409; *Fairfax* v. *Alexander*, 28 Grattan (Va.), 16; *State* v. *City of New Orleans*, 42 La. Ann. 92; *Re the Fred M. Lawrence*, 94 Fed. Rep. 1017; *Altschule* v. *Doyle*, 55 California, 633; *Fayerweather* v. *Richt*, 88 Fed. Rep. 713; *Warner* v. *Godfrey*, 186 U. S. 365; *Baltimore &c. Ry.* v. *Reade*, 62 N. E. Rep. 488; *Chapman* v. *Phœnix Bank*, 85 N. Y. 437; *Grinson* v. *Edwards*, 21 W. Va. 347; *Russell* v. *Grant*, 122 Missouri, 161; *State* v. *Railway Co.*, 45 S. C. 464; *Darr, Administrator*, v. *Rohr*, 82 Virginia, 359; *Schlitz* v. *Roenitz*, 86 Wisconsin, 36; *Carroll &c.* v. *Parks*, 32 Arkansas, 131; *Hickman* v. *Kempner*, 35 Arkansas, 505; *State* v. *Newton*, 33 Arkansas, 276; *Little Rock &c. Ry.* v. *Payne*, 33 Arkansas, 816; *Smith* v. *Leach*, 44 Arkansas, 287; *Clayton* v. *Johnson*, 36 Arkansas, 406.

*Mr. Lewis Rhoton* and *Mr. James H. Stevenson*, with whom *Mr. F. Guy Fulk, Mr. W. F. Kirby, Mr. W. L. Terry*, and *Mr. W. M. Lewis* were on the brief, for defendant in error:

The act of 1905 was passed in the exercise of the reserved power of the State to alter, amend or repeal the laws affecting corporations. The appellant by entering the State assented to this reservation, and by remaining in the State after the act took effect assented to be bound by the terms thereof. Constitution of Arkansas, art. 12, § 11; *American Smelting & Refining Co.* v. *Colorado*, 204 U. S. 103; *C., R. I. & P. Ry.* v. *Ludwig*, 156 Fed. Rep. 152.

The right of the State to prescribe conditions upon the right of the defendant and other foreign and domestic corporations to do business in Arkansas, and to lay burdens and duties upon them, flows from the reservation in art. 12, § 6, of its constitution. The only limitation upon this right is contained in the provision that such alteration, amendment or revocation of charters shall be made "in such manner, however, that no injustice shall be done to corporators."

What would be a just or unjust amendment or alteration of the laws governing corporate privileges, under this constitutional provision, is and must be a question for the state court, and is not a Federal question.

The Supreme Court of Arkansas has held that this act is valid, under the constitution of Arkansas. *Hartford Ins. Co.* v. *State*, 76 Arkansas, 303.

On the hearing of this cause below, the Supreme Court of Arkansas necessarily, in holding that §§ 8 and 9 were valid, held that their enactment was within the constitutional power of amendment reserved to the State. The highest court of a State is the tribunal of last resort upon all questions of the validity of a state statute as measured by the state constitution. *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *Mo. Pac. Ry.* v. *Humes*, 115 U. S. 512, 520; *Fallbrook Irr. Dist.* v. *Bradley*, 164 U. S. 112; *French* v. *Barber Asphalt Co.*, 181 U. S. 324; *Hibben* v. *Smith*, 191 U. S. 310; *Olsen* v. *Smith*, 195 U. S. 332; *National Cotton Oil Co.* v. *Texas*, 197 U. S. 130, 131; *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28, 43; *Hunter* v. *Pittsburgh*, 207 U. S. 67.

Furthermore, the Supreme Court of Arkansas, in the case at bar, has held that these sections are valid, under the constitution of Arkansas—i. e., that they constitute such regulations as fall within the reserved power of the State to alter, amend or repeal the laws governing corporations. Upon this proposition, likewise, the decision of the highest court of the State is conclusive. *Sinking Fund Cases*, 99 U. S. 700; *Miller* v. *State,* 15 Wall. 498; *Holyoke Co.* v. *Lyman*, 15 Wall. 519; *Tomlinson* v. *Jessup*, 15 Wall. 459; *Railway Co.* v. *Maine*, 96 U. S. 510; *Shields* v. *Ohio*, 95 U. S. 324; *Woodson* v. *State*, 69 Arkansas, 521; *Railway* v. *Leep*, 54 Arkansas, 101.

A foreign corporation which comes into a State does so under an implied agreement to all the powers of the State reserved by its constitution. *State* v. *Standard Oil Co. of Indiana*, 91 S. W. Rep. 1062; *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28; *Bank of Augusta* v. *Earl*, 13 Pet. 519; *Hooper* v. *California*, 155 U. S. 648.

The act in question does not punish for acts committed beyond the jurisdiction of the State of Arkansas. The doing of business in Arkansas under given circumstances, and not the formation of the combination, is the gist of the prohibited action. *Hartford Ins. Co.* v. *State,* 76 Arkansas, 303; *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28; *Armour Packing Co.* v. *Lacy,* 200 U. S. 226.

Section 8 of the act, referring to the production of witnesses, books, papers and documents to be used as evidence, etc., is not invalid as contended. *Hammond Packing Co.* v. *State,* 81 Arkansas, 540, 541; *Consolidated Rendering Co.* v. *Vermont,* 207 U. S. 541; *Hale* v. *Henkel,* 201 U. S. 43; *State* v. *Standard Oil Co.,* 91 S. W. Rep. 1162; *National Cotton Oil Co.* v. *Texas,* 197 U. S. 133.

Section 9 of the act prescribes a procedure which meets all the requirements of due process of law, and under the facts as shown in the record, plaintiff in error has not been deprived of its property without due process of law. *Holden* v. *Hardy,* 169 U. S. 366; *Brown* v. *New Jersey,* 175 U. S. 178; *Iowa* v. *Iowa Cent. Ry. Co.,* 160 U. S. 389; *L. & N. Ry. Co.* v. *Schmidt,* 177 U. S. 230; *Wilson* v. *North Carolina,* 169 U. S. 586; *Hovey* v. *Elliott,* 167 U. S. 409, distinguished.

The essentials of due process of law as required by the Fourteenth Amendment are notice and opportunity to defend.

A party has no constitutional right to any particular form of procedure or to have applied to a case the rules of procedure which are derived from the common law.

The States, subject only to the qualification that they can not wholly deny a defendant some sort of terms, have the free and uncontrolled right to prescribe new forms of procedure and impose terms and conditions upon parties in their courts.

There is no fixed standard by which the sufficiency of the notice or opportunity to be heard shall be measured; and that the States may constitutionally abolish the ordinary or common law rules governing the hearing of cases and substitute

other procedures, so long as they give some sort of notice and opportunity to be heard.

Arising out of the distinction between the powers of the States and of the Federal Government, there is a distinction between the due process of law under the Fourteenth and Fifth Amendments, at least to the extent that the States may authorize procedures in their own courts, even unknown to the common law.

The contemporaneous construction of the due process phrase of the Fifth Amendment, placed upon it by the Congress which proposed it, by the passage of the act of 1789, demonstrates that a default judgment may be authorized by statute for refusal to produce evidence, without a denial of due process.

The legislation and decisions of the several States, authorizing such default judgments, demonstrate that the same have never been regarded as denying the due process of law.

MR. JUSTICE WHITE delivered the opinion of the court.

The Hammond Packing Company, an Illinois corporation—hereafter called the Hammond Company—seeks to reverse a judgment for ten thousand dollars as penalties for alleged violations of a state law referred to as the Anti-Trust Act of 1905.

The Hammond Company challenged the authority which the act purported to exert and the forms of procedure which the statute authorized and which were employed to enforce its requirements, because of their alleged repugnancy to the Constitution of the United States, in particulars which were enumerated. The Supreme Court of Arkansas held that the acts which the Hammond Company was charged with having committed were within the prohibitions of the law of 1905, and that the statute was in no respect repugnant to the Constitution of the United States. These conclusions were sustained by considering prior cognate legislation, and a construction given thereto, as well as by an analysis of the act of 1905, elucidated by a prior decision made concerning the same. Before recurring particularly to the procedure and judgment in this case we advert

to these subjects, as they are essential to a comprehension of the matters here arising for decision.

The constitution of Arkansas of 1874 (§ 11, art. 12) authorized foreign corporations to do business in the State, subject to the same regulations and with the same rights as those enjoyed by domestic corporations. Carrying these provisions into effect, the legislature (Kirby's Digest Laws, Ark., §§ 824 to 827) authorized permits to be issued to foreign corporations, subjecting them to like control and entitling them to the same privileges as domestic corporations on payment of the same fees as were exacted from a domestic corporation and on compliance with other statutory requirements. In § 6, art. 12, of the same constitution there was contained a reservation of the power of the legislature to repeal, alter or amend charters of incorporation, subject, however, to the limitation that thereby "no injustice shall be done to the corporators."

The Hammond Company obtained a permit and engaged in business within the State of Arkansas.

In 1899 what was known as the Rector Act was enacted for the punishment of pools, trusts and conspiracies to control prices, etc. Under this law an action was commenced to recover penalties against the Lancashire Fire Insurance Company, a foreign corporation doing business under a permit. The case was in 1899 decided by the Supreme Court of Arkansas against the State. 66 Arkansas, 466. The court held that "it [the statute] did not intend to prohibit or punish acts done or agreements made in foreign countries by corporations doing business here, when such acts or agreements have reference only to persons or property or prices in such foreign countries."

In January, 1905, the Rector Act was repealed and the statute now in question was enacted. The first section of the new law, which is in the margin,[1] reënacted the first section of the old act, with certain additions, which are in italics. Various sec-

---

[1] Sec. 1. Any corporation organized under the laws of this or any other State, or country, and transacting or conducting any kind of business in this State, or any partnership or individual, or other association

tions were added in the new law, of which only §§ 8 and 9 are particularly relevant to this controversy. As we shall hereafter have occasion to specially consider these sections, they are presently put out of view.

The Hartford Fire Insurance Company—a Connecticut corporation—was proceeded against for alleged violations of the act of 1905. The company defended on the ground that it was not a member of or a party to any pool, etc., made in Arkansas, and that it was not a member of any pool, etc., which in any manner affected the premium for insuring property within that State.

In disposing of the case the Supreme Court of Arkansas (76 Arkansas, 303) considered two questions: First, the proper construction of the act; and second, its constitutionality as construed. The first question was thus stated:

"1. Does the act prohibit, under the penalty named therein, a foreign insurance corporation from doing business in Arkan-

---

or persons whatsoever, who *are now, or* shall *hereafter* create, enter into, become a member of, or a party to, any pool, trust, agreement, combination, confederation or understanding, *whether the same is made in this State or elsewhere,* with any other corporation, partnership, individual, or any other person or association of persons, to regulate or fix *either in this State or elsewhere* the price of any article of manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever, or the price or premium to be paid for insuring property against loss or damage by fire, lightning or tornado, or to maintain said price when so regulated or fixed, *or who are now,* or shall *hereafter* enter into, become a member of, or a party to any pool, agreement, contract, combination, association or confederation, *whether made in this State or elsewhere,* to fix or limit *in this State or elsewhere,* the amount or quantity of any article of manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever, or the price or premium to be paid for insuring property against loss or damage by fire, lightning, storm, cyclone, tornado or any other kind of policy issued by any corporation, partnership, individual or association of persons aforesaid, shall be deemed and adjudged guilty of a conspiracy to defraud and be subject to the penalties as provided by this act.

sas while such corporation is a member of a pool, trust or combination to fix insurance rates anywhere, although such pool, trust or combination is not created or maintained in Arkansas, and does not affect or fix, or attempt to do so, rates of insurance in Arkansas. To state the proposition by illustration: Assume that the appellant is a member of a trust—called a rating bureau—created and maintained in New York city, to fix and maintain insurance rates in New York city and St. Petersburg, but which does not fix or affect rates in Arkansas, is it guilty of a violation of the act if it transacts an insurance business in Arkansas upon complying with all the statutes of the State, except the one at bar?"

In solving this question the court deemed that the correct meaning of the statute was to be ascertained by its text as illustrated by the history of the times indicating the motives which led to the adoption of the act. On this subject it was pointed out that after the decision in the *Lancashire case* public agitation concerning the effect of that decision had arisen and had occasioned an introduction in the legislature at different times of a proposed bill, known as the King bill, intended to counteract the effect of the decision in the *Lancashire case*, but which bill had failed of passage. The court said:

"In 1904 the dominant political party in this State, through its party platform, demanded of the next general assembly the passage of the King bill, and of the purpose of said bill said: 'Whereby all foreign corporations shall be prevented from doing business in this State, if they are members of any trust, pool, combination, or conspiracy against trade, whether such trust, pool, combination, or conspiracy affects or is intended to affect prices or rates in Arkansas or not.' The general assembly elected in 1904, composed almost entirely of members of the political party whose platform is quoted, with remarkable unanimity and rapidity passed the King bill, which had been rejected by the two preceding general assemblies, and in less than a fortnight of its organization it was approved, and it is the statute now at bar."

It was decided (Wood and Battle, JJ., dissenting) "that the general assembly intended by this act to subject to the penalty of it any foreign corporation doing business in this State while a member of a trust formed to fix prices anywhere."

The act as thus interpreted was sustained upon the theory that "the State has dictated these terms upon which foreign insurance companies can do business in this State," and the State "possesses the right to declare that foreign insurance corporations cannot do business in this State while belonging to a pool, trust, combination, conspiracy, or confederation, to fix or affect insurance rates anywhere."

Shortly after the decision in the *Hartford case* this action was commenced by the State against the Hammond Company for a forfeiture of its permit to do business in Arkansas and for money penalties. As finally amended the complaint consisted of four paragraphs or counts. As, however, during the progress of the cause counsel stipulated that if any relief was awarded against the Hammond Company it should be confined to the matters charged in the first paragraph of the complaint and be limited to a money recovery not exceeding ten thousand dollars, and effect was given to the stipulation in the final action of the court, we put all but the first paragraph out of view.

In the first paragraph the existence of the Hammond Company and its carrying on the business of dealing in live stock and the products thereof in Arkansas at a date named was averred. It was then charged that on the date mentioned, and other stated days, the company, in violation of the act of 1905, was a member or party to a pool or trust, agreement, combination or understanding with corporations and persons, named and unnamed, who were engaged in the same line of business to regulate the prices of slaughtered live stock and to maintain such prices as so regulated and fixed. The paragraph concluded with the prayer for "judgment that the right and privilege of said defendant to do business in this State be declared forfeited, and that plaintiff have and recover of said defendant the sum of thirty thousand dollars, and all her costs in this suit

expended, together with all the expenses of the attorney general in prosecuting same, as provided in said act, and for all other and proper relief."

On the ground that the complaint was so vague that it was impossible to answer the same, the Hammond Company moved that the State be directed to make the complaint more specific, so as to show when the alleged pool or trust was created, in what respect it constituted a violation of the statute, and where, in the vast area in which it was alleged the business of the company was carried on, the asserted unlawful agreement was to operate. The motion was denied.

The complaint was demurred to on the ground that it did not allege the formation of any pool or trust in Arkansas or that it was to affect prices within that State, and therefore if the facts charged were within the prohibition of the statute the act was wanting in due process of law and was repugnant to the Fourteenth Amendment, because it was an attempt by the State to exercise authority beyond its jurisdiction. On the overruling of the demurrer the first paragraph was answered by a general and specific denial of each and every allegation thereof. Moreover, it was specially asserted that the permit was a contract on the faith of which large sums of money had been expended in purchasing property and in making permanent improvements thereon within the State which would be destroyed by a revocation of the permit, and that the business of the company was largely interstate commerce. Various defenses under the Constitution of the United States were specifically advanced, as follows: First, that to revoke the permit for the causes alleged would impair the obligations of the contract which had resulted from the issue of the permit; and, second, that to grant the relief prayed would violate the equal protection, due process, *ex post facto* and interstate commerce clauses of the Constitution of the United States.

A request of the Hammond Company that all depositions to be taken outside of the jurisdiction of the court be upon written interrogatories was denied.

The Attorney General, availing himself of § 8 of the act, which is in the margin,[1] moved for the appointment of a commis-

---

[1] SEC. 8. Whenever any proceeding shall be commenced in any court of competent jurisdiction in this State by the attorney general or prosecuting attorney against any corporation or corporations, individual or individuals, or association of individuals, or joint stock association or copartnership under the law against the formation and maintenance of pools, trusts of any kind, monopolies or confederations, combinations or organizations in restraint of trade, to dissolve the same or to restrain their formation or maintenance in this State, or to recover the penalties in this act provided, then and in such case, if the attorney general or prosecuting attorney desires to take the testimony of any officer, director, agent, or employé of any corporation, or joint stock association proceeded against, or in case of a copartnership, any of the members of said partnership, or any employé thereof, in any court in which said action may be pending; and the individual or individuals whose testimony is desired are without the jurisdiction of this State, or reside without the State of Arkansas, then in such case, the attorney general or prosecuting attorney may file in said court in term time, or with the judge thereof in vacation, a statement, in writing, setting forth the name or names of the persons or individuals whose testimony he desires to take, and the time when and the place where he desires said persons to appear; and thereupon the court or judge thereof shall make an order for the taking of said testimony of such person or persons and for the production of any books, papers and documents in his possession or under his control relating to the merits of any suit, or to any evidence therein, shall appoint a commission for that purpose, who shall be an officer authorized by law to take depositions in this State, and said commission shall issue immediately a notice, in writing, directed to the attorney or attorneys of record in said cause, or agent, or officer, or other employé, that the testimony of the person named in the application of the attorney general or the prosecuting attorney is desired, and requesting said attorney or attorneys of record, or said officer, agent or employé to whom said notice is delivered, and upon whom the same is served, to have said officer, agent, employé, representative of said copartnership, or agent thereof, whose evidence it is desired to take, together with such books, papers and documents, at the place named in the application of the attorney general, or the prosecuting attorney, and at the time fixed in said application, then and there to testify: *Provided, however,* That such application shall always allow in fixing said time the same number of days' travel to reach the designated place in Ar-

sioner to take testimony in the city of Chicago and for the production and examination before him of books and papers. The motion stated, first, that sixteen named persons resided in or near Chicago, and were either officers, agents, directors or employés of the Hammond Company; that it was the desire of the State to take their testimony on a day named, that all of said witnesses were hostile and would not make fair answers to written interrogatories, that the facts as to the business methods of the corporation "relevant to the issue in this case and within the knowledge of the said persons aforementioned are such that your relator can have no accurate knowledge of same until opportunity is given him to interrogate the aforesaid persons, who have peculiar and sole knowledge thereof; and that it is impossible for your relator to so frame written interrogatories to said persons as to elicit the facts within their knowledge relevant to the issues in this case." As to the production of books and papers, it was stated that "said persons have in their possession and under their control, and at the Chicago office of the defendant company, numerous books, papers and documents bearing upon the issues in this cause and relevant to the claim of the plaintiff herein; that the precise description and nature of these is peculiarly within the knowledge of the aforesaid persons; and that it is impossible for your relator to so frame written interrogatories and demands as to require the production of such books, papers and documents as aforesaid as are relevant to the issues in this cause." In response to this motion the Hammond Company asked that the State be required to "set out specifically what she expects to prove by each witness she desires produced, and also to set out specifically a particular

---

kansas that would now be allowed by law in case of taking depositions: *Provided, also,* In addition to the above-named time, six days shall be allowed for the attorney or attorneys of record, or the agent, officer or employé on whom notice is served to notify the person or persons whose testimony is to be taken. Service of said notice as returned in writing may be made by any one authorized by law to serve a subpœna.

description of any books she desires produced by any of said witnesses, together with the name of the witness who is to produce them, and that she be required to specifically state wherein any of said books so named are material to the issues in the case." The Attorney General thereupon filed an affidavit, reciting that he was "at this time unable to designate and particularly point out the books, papers and documents which will be required in evidence on the execution of the commission . . . that the contents and particular description of said books, papers and documents are matters peculiarly within the knowledge of the defendant, and the witnesses whose examination is prayed at said time and place, and that it is impossible and impracticable for me at this time to designate particularly the matters as to which each witness whose testimony is sought to be taken . . . can testify, or to frame interrogatories to such witnesses or state at this time the substance of his evidence, for the reason that the matters as to which it is sought to examine said witnesses are matters touching the conduct and business of the defendant company and as to which the defendant and said witnesses have peculiar and sole knowledge." The motion to make the request more specific was overruled and an order was entered authorizing the designated commissioner to take the testimony of the witnesses named and to have produced before him by the Hammond Company "any books, papers and documents in the possession or under the control of either of said persons relating to the merits of said cause or to any defense therein," accompanied with the proviso "that at such examination the witnesses and books aforesaid shall not be required to be produced at any one time in such numbers as to interfere with the operation of the defendant's business." The order contained specific directions commanding the Hammond Company, through its officers or agents or attorney, to have the witnesses named present for examination and to produce the books referred to in the order. To the entry of this order exception was duly reserved.

The commissioner notified the Hammond Company to produce the witnesses named and the books and papers referred to at his office in Chicago on a designated day. The Hammond Company, through its attorneys, declined to comply and stated, in writing, that it could not concede the power of the court to make the order which it had made, and that "on the contrary it was of the opinion that the request calls upon it [the Hammond Company] to surrender rights in which it is protected by the Constitution of the United States and of the State of Arkansas that are too valuable to be surrendered."

Return, stating the refusal to produce, having been made to the court, the Attorney General, under § 9 of the act of 1905, which is in the margin,[1] moved to strike out all "answers, de-

---

[1] Sec. 9. Whenever the persons mentioned in the preceding sections shall be notified, as above provided, to request any officer, agent, director or employé to attend before any court, or before any person authorized to take the testimony in said proceedings, and the person or persons whose testimony is requested, as above provided, shall fail to appear and testify and produce any books, papers and documents, they may be ordered to produce by the court, or the other officer authorized to take such evidence, then it will be the duty of the court, upon motion of the attorney general or prosecuting attorney, to strike out the answer, motion, reply, demurrer or other pleading then or thereafter filed in said action or proceeding by the said corporation, joint stock association or copartnership, whose officer, agent, director or employé has neglected or failed to attend and testify and produce all books, papers and documents he or they shall have been ordered to produce in said action by the court or person authorized to take said testimony, and said court shall proceed to render judgment by default against said corporation, joint stock association or copartnership. *And it is further provided,* That in case any officer, agent, employé, director or representative of any corporation, joint stock association or copartnership in such proceeding, as hereinbefore mentioned, who shall reside or be found within this State, shall be subpœnaed to appear and testify or to produce books, papers and documents, and shall fail, neglect or refuse to do so, then the answer, motion, demurrer or other pleading then and thereafter filed by said corporation, joint stock association or copartnership in any such proceeding, shall, on motion of the attorney general or prosecuting attorney, be stricken out and judgment in said cause rendered against said corporation, joint stock association or copartnership.

murrers, motions, replies or other pleadings filed by the defendant in this cause and render in favor of the State of Arkansas a default judgment in this case for ten thousand dollars, as penalties for the violations of the act of the general assembly of the State of Arkansas, approved January 23, 1905, on the days and dates set forth in the complaint herein, and for all costs in this cause incurred." The Hammond Company, in response to the motion, set up the defense that to deny it the right to defend would be a condemnation without a hearing and a consequent denial of due process of law in conflict with the Fourteenth Amendment. The motion of the Attorney General was granted, and a judgment for penalties amounting to ten thousand dollars was, as before stated, entered, which on appeal was affirmed by the Supreme Court. 81 Arkansas, 519.

On the general question of the meaning of the act of 1905 the court adhered to the interpretation given the act in *Hartford Insurance Co.* v. *State, supra,* and also to the ruling in that case made concerning its validity, both as regards the constitution of the State and that of the United States. After holding that the proceeding was not criminal but was "purely a statutory action to recover the penalties of the statute for doing business in the State contrary to its terms," the court came to consider the objections urged to the validity of §§ 8 and 9. Passing on the contention that the order made under § 8 for the production of books, papers and witnesses was so unlimited as to be repugnant to the state and Federal constitutions, the subject was considered from a twofold aspect; first, the order for the production of the books and papers; and, second, that for the production of witnesses. As to the first, while conceding for the sake of argument that it might be that an order on a corporation, whether domestic or foreign, for the production of books and papers could be framed in so unlimited a manner as to amount to a violation of a provision against unreasonable searches and seizures found in the state constitution, it was held that that question was irrelevant and not necessary to be

decided. This conclusion was reached because it was declared that, as the order called also for the production of witnesses, if there was a failure to comply with that portion of the order the judgment below was properly rendered. Considering the validity of the order for the production of the witnesses and the contention that it was so arbitrary and unreasonable as to amount to a denial of due process of law, because it called upon the corporation to produce a number of witnesses, simply upon the averment that they had some contract or fiduciary relation with the company, without at all considering its power to produce them or affording to the corporation any compulsory process for requiring the witnesses to attend if they were unwilling to do so, the court, speaking of the statute, said:

"If these provisions mean that the corporation must be a policeman, and bring into court on demand its president, book-keeper or doorkeeper *vi et armis*, certainly it would be an unreasonable imposition. An analysis of the provisions, however, will not justify such construction. These sections evidently mean this and nothing more: that the corporation shall on demand request any given officer, agent or employé to be present at the time named for examination as a witness (and in case of production of books and papers that the given officer or agent produce the given papers), and on a failure to comply with these requirements that it be defaulted. Of course this necessarily contemplates an honest effort to produce the testimony called for. When that is made, then the statute is complied with; when it is not, as in this case, where the defendant corporation refused to obey any part of the order, then the statute is not complied with, and that brings up the gravest question of the case."

In holding that the provisions of § 9, authorizing the striking out of the pleadings of the defendant and rendering judgment against him, as by default, were valid, the court held that the conferring of such a power by the statute, and its exercise as manifested in the case before it, was not repugnant to either

the constitution of the State or that of the United States. In reaching this conclusion the court, in substance, held that the ruling of this court in *Hovey* v. *Elliott*, 167 U. S. 416, must be limited to a case where a court, in virtue alone of its asserted inherent power to punish for contempt, strikes an answer from the files and renders judgment as by default, and therefore did not embrace a case where such authority was exercised by a court in consequence of an express delegation by law of the power so to do. This limitation on the ruling in *Hovey* v. *Elliott* was deemed to be justified by a reference to and an analysis of the statutory law of the United States, which the court deemed conferred such power upon the courts of the United States, as well as many state statutes, including those of Arkansas and various state decisions, all of which it was deemed established the existence of the legislative power to authorize a court to punish a defendant by striking his answer from the files, and, over his objection, rendering a judgment against him.

Condensing, though not changing, the substance of the assignments of error, in the light flowing from the review which we have made, we come to dispose of such assignments, not, however, following the precise order in which they are stated in the brief of counsel.

*1st. Section 1 of the law of 1905 legislates concerning acts done beyond the limits of the State, and therefore takes property without due process of law, and deprives of the equal protection of the laws, contrary to the Fourteenth Amendment.*

But the premise upon which the proposition is based is imaginary, since it assumes that the statute does that which it has been conclusively determined by the court below it does not do. The interpretation which the court below gave to the statute was that it did not purport to forbid or affix penalties to acts done beyond the State, but that it simply forbade a corporation from continuing to do business within the State after it had done, either within or outside of the State, the enumerated acts. If the premise of the asserted proposition

be that even although the statute addressed itself exclusively
to the doing of business within the State under the circum-
stances stated, it nevertheless exerted an extraterritorial power,
because it restrained the continuance of the business within
the State by a corporation which had done the designated acts
outside of the State, we think the proposition without merit.
As the State possessed the plenary power to exclude a foreign
corporation from doing business within its borders, it follows
that if the State exerted such unquestioned power from a con-
sideration of acts done in another jurisdiction, the motive for
the exertion of the lawful power did not operate to destroy the
right to call the power into play. This being true, it follows
that, as the power of the State to prevent a foreign corporation
from continuing to do business is but the correlative of its au-
thority to prevent such corporation from coming into the State,
unless by the act of admission some contract right in favor of
the corporation arose, which we shall hereafter consider, it fol-
lows that the prohibition against continuing to do business in
the State because of acts done beyond the State was none the
less a valid exertion of power as to a subject within the jurisdic-
tion of the State.

In both the refusal to permit the coming into the State and
the exclusion therefrom of a corporation previously admitted un-
der the circumstances stated, while it may be said that the acts
done out of the State and their anticipated reflex result may
have been the originating cause for the exertion of the lawful
authority to refuse permission to come into the State, or to re-
voke such permission previously given, that fact is immaterial
in a judicial inquiry as to the right either to refuse to give or to
revoke a permit to do business within the State, since the power,
and not the motive, is the test to be resorted to for the purpose
of determining the constitutionality of the legislative action.

Although it be conceded that the provisions of the statute
cannot consistently with constitutional limitations be applied
to individuals, such concession would not cause the act to
amount to a denial of the equal protection of the laws.  The

difference between the extent of the power which the State may exert over the doing of business within the State by an individual and that which it can exercise as to corporations furnishes a distinction authorizing a classification between the two. It is apparent that the court below, both in the *Hartford case* and in this, by a construction which is here binding, treated the statute, in so far as its prohibitions were addressed to individuals, as separable from its requirements as to corporations, and, therefore, even though there was a want of constitutional power to include individuals within the prohibitions of the act, that fact does not affect the validity of the law as to corporations.

*2d. The act as construed by the court below is repugnant to § 10 of Art. I of the Constitution of the United States, since the necessary effect of that construction is to impair the obligation of the contract which was created in virtue of the constitution and laws of Arkansas by the permit which was issued.*

By the constitution and laws of the State of Arkansas it is said foreign corporations, when lawfully admitted to do business in the State, were entitled to rights equal to those enjoyed by domestic corporations. Possessing this right of equality, it is argued that a permit to do business could not be revoked for causes not made applicable to domestic corporations without impairing the obligations of the contract which arose from the permit. *American Smelting Company* v. *Colorado*, 204 U. S. 103. With this proposition in hand—which is not denied by the State—the argument insists that as the statute does not forbid a domestic corporation from continuing to do business under a charter granted by the State, because it has done the acts specified in the statute, therefore a discrimination results in favor of domestic corporations. But, again, the contention rests upon an erroneous assumption as to the operation of the statute. We say this because on the face of the statute its prohibitions are made applicable to domestic and foreign corporations. The insistence that the result of the decision in this case, as well as of that made in the *Hartford case,* is to give the stat-

ute a controlling construction, operating to exempt domestic corporations from its provisions, is unfounded. True, that both in the *Hartford case*, as in this, the court below, in testing the question of power considered solely the scope of the legislative authority over foreign corporations. But in so doing the court simply confined itself to the question before it, as in both cases the defendants were foreign corporations doing business under permit. Nothing in the general reasoning advanced by the court as to the power of the State over foreign corporations begets the thought that it was intended to decide that the express words of the statute concerning domestic corporations were meaningless or beyond the authority of the State to enact. While it is true that the reference made in the opinion in the *Hartford case* to the platform of the dominant political party which it was assumed shed light upon the true meaning of the act indicates that the impelling motive in adopting the act of 1905 was to reach foreign corporations, this does not justify the inference that the act was not intended to govern domestic corporations doing like acts, but, on the contrary, tends to establish the existence in the legislative mind of the purpose not to discriminate in favor of domestic corporations, since the latter were expressly embraced in the statute.

The contention that to apply the law to domestic corporations would as to such corporations cause it to be repugnant to the contract clause of the Constitution, is without merit. The chartered right to do a particular business did not operate to deprive the State of its lawful police authority, and therefore the franchise to do the business was inherently qualified by the duty to execute the charter powers conformably to such reasonable police regulations as might thereafter be adopted in the interest of the public welfare. Besides, it is not disputed that the State under its constitution had a reserve power to repeal, alter and amend charters by it granted, and therefore, even if the impossible assumption was indulged that the grant of the power to do business implied in the absence of such reservation the right to carry on the business in violation of a lawfully

regulating statute, the existence of the reserve power leaves no semblance of ground for the proposition. The claim of an irrepealable contract cannot be predicated upon a contract which is repealable. *Citizens' Savings Bank* v. *Owensboro,* 173 U. S. 636, 644. And no support for the contrary view arises, because the constitution of Arkansas exacted that the authority to repeal, · alter and amend should be exercised "in such manner, however, that no injustice be done to the corporators." The determination whether the power to repeal, alter or amend was exerted in such a manner as to be unjust to incorporators was within the province of the state court to finally decide, unless that power was exerted in such an arbitrary manner as, irrespective of the · contract clause, to deprive of some other and fundamental right which was within the protection of the Constitution of the United States. ,

*3d. The action of the trial court in making the order to produce, and on failure to comply therewith, striking the pleadings of the Hammond Company from the files and rendering a judgment as by default, was void, because repugnant to the equal protection and due process clauses of the Fourteenth Amendment.*

As the conduct of the trial court on the subjects with which this proposition is concerned conformed to the authority conferred by §§ 8 and 9 of the statute, it follows that the proposition is that those sections are repugnant to the Fourteenth Amendment. The grounds which are made the basis of this proposition are numerous and are stated in various forms not separated one from the other. We shall disentangle them and treat them separately, and thus consider and dispose of them all.

It is said, conceding that the power which § 8 confers could be exerted under just limitations, yet the order made, which was authorized by the statute, was so unlimited, so arbitrary and unjust as to cause it to be wanting in due process. This rests upon the assumption that the order to produce the books . and papers of the company and the witnesses, was imperative, and did not consider the ability of the company to comply, furnished no compulsory process to compel obedience in case a

named witness refused to appear at the request of the company, and therefore left the company helpless and subject to pains and penalties for a failure to do that which it may not have been in its power to do.  But again the proposition rests upon the assumption that the statute and the order which conformed to it did that which the court below decided it did not do. Conceding, for the sake of the argument, that the broad provisions of § 8 and the general language of the order to produce, might on their face be amenable to the criticism which the proposition involves, the statement we have previously made demonstrates that the court below, by a construction which is binding here, expressly decided that neither the statute nor the order were subject to the interpretation which the argument attributes to them.  Indeed, the court impliedly conceded that if the statute and the order meant that which the argument contends they did mean, both the statute & i.' the order would have been void.  But in intimating to that effect it was expressly held that all the statute required was a *bona fide* effort to comply with an order made pursuant to its provisions, and therefore any reasonable showing of an inability to comply would have satisfied the requirements both of the statute and the order.  As the Hammond Company absolutely declined to obey the order and stood upon what it deemed to be its lawful rights and privileges, even if that course of conduct was taken because of a contrary conception as to the meaning of the statute, it is not within our province to afford relief because of an error of judgment in this respect.  That is to say, we may not hold that the statute and order were arbitrary and unjust in the particulars asserted when it is conclusively determined that they do not have that effect.

It is insisted that the order to produce was so general and indefinite as to amount to an unreasonable search and seizure, and consequently was wanting in due process of law.  But conceding, for the sake of argument only and not so deciding that the due process clause of the Fourteenth Amendment emb. aces in its generic terms a prohibition against unreasonable searches

and seizures, a question hitherto reserved, under circumstances analogous to those here present, in *Consolidated Rendering Co.* v. *Vermont*, 207 U. S. 541, we think the ruling made in that case establishes the unsoundness of the contention. We say this because it was in that case determined in view of the visitorial powers of a State over corporations doing business within its borders and the right of the State to know whether the business of a corporation was being carried on in a lawful manner, that it was competent for the State to compel the production of the books and papers of the corporation in an investigation to ascertain whether the laws of the State had been complied with. And of course such power embraces the authority to require the giving of testimony by the officers, agents and other employés of the corporation for like and analogous purposes. It is true that the books and papers to which the order made in the cited case related were those of a foreign corporation doing business in Vermont, and which had been kept in the State, but had been taken therefrom. But we see no reason to hold that this case is not controlled by the principle applied in the *Consolidated Rendering Co. case*, because the books of the Hammond Company, which were called for, may not have been at any time kept within the State of Arkansas.

Nor do we think there is merit in the contention that the order to produce was wanting in due process because it was made in a pending suit and sought to elicit proof not only as to the liability of the company, but also the proof in the possession of the company relevant to its defense to the claim which the State asserted. As these subjects were within the scope of the visitorial power of the State and concerning which it had the right to be fully informed, the mere incident or purpose for which the lawful power was exerted affords no ground to deny its existence. In *Consolidated Rendering Company* v. *Vermont*, the books and papers were required for an investigation before a grand jury concerning supposed misconduct of the corporation. The power to compel the production to ascertain whether wrong had been done, in the nature of things, as the greater in-

cludes the less, is decisive as to the right to exact the production for the purpose of proof in a pending cause. See *Hale* v. *Henkel,* 201 U. S. 43. If, as was in that case decided, the power of visitation could be exercised, even although it might lead to the production of incriminating evidence merely because the order to produce in this case called for evidence in the possession of the corporation relevant to its defense did not affect the validity of the order.

The contention that because § 8 applies only to books and papers outside of the State, therefore it denies the equal protection of the laws is not open, since it has been conclusively settled that, without denying the equal protection of the laws, relations may be based upon the fact that persons or property dealt with are not within the territorial jurisdiction of the regulating authority. *Central Loan & Trust Co.* v. *Campbell,* 173 U. S. 84. Even if, as contended, the remedy given by the act for the production of books and papers and the examination of witnesses is confined to corporations and joint stock associations, and does not extend to individuals, that fact also furnishes no ground for the proposition that a denial of the equal protection of the laws thereby resulted. The wider scope of the power which the State possesses over corporations and joint stock associations in and of itself affords a ground for the classification adopted.

Lastly, with much earnestness and elaboration, it is urged that the action of the court, authorized by § 9, in striking the answer from the files and rendering a judgment as by default, is conclusively demonstrated to have been a denial of due process of law by the ruling in *Hovey* v. *Elliott,* 167 U. S. 409, and the previous cases in this court which were there cited and applied. The ruling in *Hovey* v. *Elliott* was that to punish for contempt by striking an answer from the files and condemning, as by default, was a denial of due process of law, and therefore repugnant to the Fourteenth Amendment. There the power to strike out and punish was exerted, by the court, in virtue of what it assumed to be its inherent authority, and the occasion

which caused the exercise of the assumed authority was the re-
fusal of the defendant to comply with an order to pay into the
registry of the court a sum of money which, it was held, had
been illegally withdrawn, and the right to which was at issue in
the suit.　Merely because the power to strike out an answer
and enter a default, which was exerted by the court below in
this case, was authorized by the ninth section of the statute fur-
nishes no ground for taking this case out of the ruling in *Hovey*
v. *Elliott*, if otherwise controlling.　The fundamental guarantee
of due process is absolute and not merely relative.　The inher-
ent want of power in a court to do what was done in *Hovey* v.
*Elliott* was in that case deduced from no especial infirmity of
the judicial power to reach the result, but upon the broad con-
ception that such power could not be called into play by any
department of the Government without transgressing the con-
stitutional safeguard as to due process, at all times dominant
and controlling where the Constitution is applicable.　Indeed
in *Hovey* v. *Elliott* the impotency of the legislative department
to endow the judicial with the capacity to disregard the Consti-
tution was emphasized.　But while this is true the question yet
remains, Is the doctrine of *Hovey* v. *Elliott* here applicable?
To determine this question we must take into view the author-
ity below, exerted not from a merely formal point of view, but
in its most fundamental aspect.　That is to say, we must trace
the power to its true source, and if from doing so it results that
the authority exerted flows from a reservoir of unquestioned
power it must follow that the action below was not unlawful,
albeit in some narrower aspect that action might be considered
as unlawful.　The essential basis for the exercise of power and
not a mere incidental result arising from its exertion is the cri-
terion by which its validity is to be measured.　*Hovey* v. *Elliott*
involved a denial of all right to defend as a mere punishment.
This case presents a failure by the defendant to produce what
we must assume was material evidence in its possession and a
resulting striking out of an answer and a default.　The pro-
ceeding here taken may therefore find its sanction in the un-

doubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of an answer begotten from the suppression or failure to produce the proof ordered, when such proof concerned the rightful decision of the cause. In a sense, of course, the striking out of the answer and default was a punishment, but it was only remotely so, as the generating source of the power was the right to create a presumption flowing from the failure to produce. The difference between mere punishment, as illustrated in *Hovey* v. *Elliott,* and the power exerted in this, is as follows: In the former due process of law was denied by the refusal to hear. In this the preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense. The want of power in the one case and its existence in the other are essential to due process, to preserve in the one and to apply and enforce in the other. In its ultimate conception therefore the power exerted below was like the authority to default or to take a bill for confessed because of a failure to answer, based upon a presumption that the material facts alleged or pleaded were admitted by not answering, and might well also be illustrated by reference to many other presumptions attached by the law to the failure of a party to a cause to specially set up or assert his supposed rights in the mode prescribed by law.

As pointed out by the court below, the law of the United States as well as the laws of many of the States, afford examples of striking out pleadings and adjudging by default for a failure to produce material evidence, the production of which has been lawfully called for. Rev. Stat. U. S. § 724, which was drawn from § 15 of the judiciary act of 1789, after conferring upon courts of law of the United States the authority to require parties to produce books and writings in their possession or under their control which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceed-

ings in chancery, expressly empowers such courts, if a plaintiff
fails to comply with the order to render a judgment of non-suit,
and if a defendant fails to comply "the court may, on motion,
give judgment against him by default." From the time of this
enactment, practically coeval with the Constitution, although
controversies have arisen as to its interpretation, no contention,
so far as we can discover, has ever been raised questioning the
power given to render a judgment by default under the circum-
stances provided for in the statute. Its validity was taken for-
granted by the court, speaking through Mr. Chief Justice Taney,
in *Thompson* v. *Selden*, 20 How. 194, and this was also assumed
by the court, speaking through Mr. Justice Bradley, in *Boyd* v.
*United States*, 116 U. S. 616, where the effect of the constitu-
tional guarantees embodied in the Fourth and Fifth Amend-
ments were elaborately and lucidly expounded. It is unneces-
sary to cite the many cases in the lower Federal courts which
manifest the same result, as they will be found collected in
Gould & Tucker's Notes on the Revised Statutes, under § 724,
and in the notes to the same section, contained in volume 3,
Federal Statutes Annotated.

And, beyond peradventure, the general course of legislation
and judicial decision in the several States indicates that it has
always been assumed that the power existed to compel the giv-
ing of testimony or the production of books and papers by
proper regulations prescribed by the legislative authority, and
for a failure to give or produce such evidence, the law might
authorize a presumption in a proper case against the party re-
fusing, justifying the rendering of a judgment by default, as if
no answer had been filed. While it may be true that in some of
the state statutes passed on the subject, and in decisions apply-
ing them, some confusion may appear to exist, resulting from
confounding the extent of the authority to punish as for a con-
tempt and the right to engender a presumption relative to proof
arising from a failure to give or produce evidence, it is accurate
to say that when viewed comprehensively the statutes and de-
cisions in effect recognize the difference between the two, and

therefore may be substantially considered as but an exertion by the States of a like power to that which was conferred upon the courts of the United States by the original judiciary act and by Revised Statutes, § 724.

Without referring in detail to the various statutes, which will be found collected as of the year 1896, in vol. 6, Ency. Law and Practice, note 3, pp. 812 *et seq.*, we content ourselves with saying that the laws of Indiana, Iowa, Mississippi, Massachusetts, Missouri, New Hampshire, Texas and Washington aptly portray the subject. As illustrative, we refer specially to the statute of Missouri, which directs that when a party refuses to produce evidence or fails to attend to testify on a proper order, besides being punished as for a contempt, the court may strike out the answer filed on behalf of the defendant, etc. This distinction is also marked in the Indiana and Washington statutes. Although the statute of Mississippi, which authorizes, in the event of a failure to obey a proper order as to the production of evidence, the striking of an answer from the files and the entry of judgment by default does not in terms refer the authority thus given to the legislative power to engender a presumption, the true source of the power was clearly pointed out in the concurring opinion of Whitfield, J. (now Chief Justice of the Supreme Court of Mississippi), in *Illinois Central R. Co. v. Sanford,* 75 Mississippi, 862, and the distinction was made manifest between the power to create a presumption of fact and the want of authority as a mere punishment for contempt to deny a hearing, as ruled in *Hovey* v. *Elliott.* And the difference between the two is also elucidated in the opinion of the Supreme Court of the State of Washington in *Lawson* v. *Black Diamond Mining Co.,* 44 Washington, 26, which interpreted and enforced a statute of the State of Washington embraced in § 6013 and immediately antecedent sections of Ballinger's Annotated Code and Statutes.

As the power to strike an answer out and enter a default, conferred by § 9 of the act of 1905, which is before us, is clearly referable to the undoubted right of the lawmaking authority

to create a presumption in respect to the want of foundation of an asserted defense against a defendant who suppresses or fails to produce evidence when legally called upon to give or produce, our opinion is that the contention that the section was repugnant to the Constitution of the United States is without foundation. In so deciding our conclusion is of course based upon the legality and sufficiency of the order to produce made under § 8 of the act, and as our decision on that subject rests upon the extent of the visitorial power which the State had the right to exercise over a corporation subject to its control, our ruling as to the legality of the call under § 8 is confined to the case before us.

*Affirmed.*

THE CHIEF JUSTICE and MR. JUSTICE PECKHAM dissent.