82 N.J. Super. 86 (1964)
196 A.2d 688
MERCK & CO., INC., PLAINTIFF-RESPONDENT,
v.
BIORGANIC LABORATORIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, NATHAN SHARFF AND SEYMOUR SALB, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1963.
Decided January 9, 1964.
*87 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Charles Rodgers argued the cause for appellant, Biorganic Laboratories, Inc. (Messrs. Breslin & Breslin, attorneys; Mr. John J. Breslin, Jr., of counsel).
Messrs. Van Riper & Belmont, attorneys for appellants, Nathan Sharff and Seymour Salb, filed Statement in lieu of brief.
Mr. Frederick B. Lacey argued the cause for respondent (Messrs. Shanley & Fisher, attorneys; Messrs. Frederick B. Lacey, Frank L. Bate and Arthur R. Schmauder, on the brief).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Defendants, pursuant to leave granted by this court, appeal from an interlocutory order of the trial court striking the answer of all the defendants herein and entering a default as to all defendants.
*88 Plaintiff is a New Jersey corporation engaged in the business of developing, producing and selling chemical and pharmaceutical products. Defendant Biorganic Laboratories, Inc., (Biorganic) is a closely held New Jersey corporation, the stock of which is owned by the individual defendants Nathan Sharff (Sharff) and Seymour Salb (Salb), and also by William Salb who is not a party to this suit. Sharff is president of Biorganic and Salb is treasurer.
In essence, this is a trade secret or secret processes suit, the gravamen of plaintiff's complaint being that defendants wrongfully obtained from certain of plaintiff's skilled employees secret and confidential information, knowledge and data belonging to plaintiff and used the same to defendants' own benefit. The suit seeks an accounting, damages and restraints.
After issue was joined, plaintiff commenced discovery proceedings. Such proceedings included attempts to take the deposition of the defendant Sharff. Plaintiff also sought the production of specified documents and records relating to Biorganic's operations. The record discloses a deliberate course of conduct by defendants and their counsel (not present counsel), the effect of which was to frustrate plaintiff's discovery. During the course of defendants' maneuvers plaintiff's counsel on several occasions spelled out orally and in writing the documents requested. Finally, when it became apparent that defendants were not acting in good faith, plaintiff served and filed a notice of motion to compel production, again specifically designating the items requested. The motion was originally returnable on September 21, 1962, but was adjourned to October 26, 1962, at defendants' request. On that date the trial judge, after hearing argument, orally directed defendants to produce the documents designated in plaintiff's motion. The court also directed defendant Sharff to answer the many questions which had been asked of him on deposition and which had not been answered. Counsel for defendants at that time advised the court that defendants would "avail ourselves of the right against self-incrimination" *89 to said questions. The formal order was ultimately signed on November 15, 1962.
Immediately after the court's oral order of October 26, 1962, plaintiff's counsel orally, by telephone, and by letter sought production of the documents in question. Defendants' counsel represented that they were being assembled and would be available in a short time. They were not produced, and plaintiff, on November 19, 1962, obtained an order directing defendants to show cause why their answer should not be stricken and why they should not be held in contempt. The order was returnable on November 30. On November 26, defendants' counsel in a telephone conversation with plaintiff's counsel stated that the documents were being brought to defendant's counsel's office the following day. Plaintiff's counsel was assured that he would be notified as soon as the documents arrived. No word having been received by the afternoon of November 28, plaintiff's counsel telephoned defendants' counsel and for the first time was told that there were no documents in existence which would be encompassed by the court's production order. On the same day defendants' counsel hand-delivered a letter to the same effect and stating that "affidavits setting forth the above" would be served.
On November 29 plaintiff's counsel was served with an affidavit executed by defendant Sharff which inter alia stated:
"6. Prior to this situation arising and as a result of the civil suits that were filed and the publicity attendant thereto and consequential loss of business, I was contemplating and had formulated a decision that Biorganic Laboratories, Inc., should go out of business.
7. On October 29, 1962, in accordance with this decision, I ceased to do business and discarded all back records of Biorganic Laboratories, Inc."
The following day, November 30, the return day of the order to show cause, plaintiff's counsel was served with an affidavit by defendant Salb stating that he had no "personal documents encompassed by" the court's production order.
*90 The trial court, after ascertaining the facts heretofore related, struck defendants' answer and entered a default as to all defendants. In making this ruling the court found that the production of the documents went to the very foundation of the plaintiff's cause of action. There is no contention in defendants' brief to the contrary, and the trial court's finding to that effect must be assumed to be well founded. The court noted that defendant Sharff, whose affidavit stated that on October 29, 1962 he had "discarded all back records of Biorganic," did not deny knowledge on his part that plaintiff had sought the inspection of such documents, nor did he deny knowledge that an order to produce such documents had been entered verbally by the court on October 26.
Defendants challenge the trial court's action on the ground that there are constitutional limitations on the power of a court to strike an answer and enter a default, and that such action is constitutionally permissible only when it is within the framework of the lawmaking power as implemented by the rules. Here, defendants argue, there was no order to produce the documents at the time they were discarded, so that defendants were not in violation of R.R. 4:27. Therefore, say defendants, no matter how contumacious the court may find defendants' actions to be, the only sanction that can be imposed on them is contempt proceedings. Defendants also contend that in fact they did not have notice or knowledge of the court's oral determination.
We find these contentions to lack any merit. We are not here concerned with the necessity of filing a written order, for such purpose, for example, as the filing of a notice of appeal. The verbal order of October 26 made in the presence of counsel was a ruling by the court binding on the parties insofar as the issues in this case are concerned. The deliberate frustration of such an order, even prior to its reduction to written form, justified the invoking of R.R. 4:27.
Such order was made prior to the admitted destruction of the documents. Defendants now assert that they did not have notice or knowledge of such verbal order prior to *91 the destruction of the documents in question. However, the record does not support such assertion and, as the trial court noted, Sharff's affidavit did not deny knowledge on his part that an order to produce the documents was entered verbally by the court on October 26. The same is true of defendant Salb's affidavit. We note also that defendants' New York counsel, who was present at the hearing on October 26, filed no affidavit that he had not notified the individual defendants of the court's verbal order prior to the destruction of the corporate records on October 29. In our judgment the record as a whole justifies a finding of fact, which we hereby make, that the individual defendants knew of the trial court's verbal order prior to the destruction of the corporate records. At best, the documents were destroyed with full knowledge that plaintiff had strenuously sought inspection of such documents and that a motion to compel production was pending and had come on for hearing on October 26. The prejudice to plaintiff is clear since, as found by the trial court, the documents which were destroyed go to the very heart of plaintiff's case.
Under such circumstances we conclude that the action taken by the trial court was proper under R.R. 4:27. See Interchemical Corp. v. Uncas Printing & Fin. Co., Inc., 39 N.J. Super. 318 (App. Div. 1956). Moreover, the record spells out such outrageous conduct on defendants' part that we must recognize the trial court's inherent power to deal with the situation and undo as best it could defendants' wrongful actions. To hold otherwise would permit defendants effectively to frustrate the prosecution of plaintiff's cause of action since, in addition to deprivation of plaintiff's right of access to the documents, we note that the individual defendants, through counsel, have advised the trial court that they will invoke the right against self-incrimination if called upon to answer questions as to their operations. There was no violation of due process. See Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1908).
Affirmed.