HARTFORD ACCIDENT & INDEMNITY COMPANY, Relator,

v.

The Honorable Amado ABASCAL, III, Respondent.

No. 04-91-00511-CV.

Court of Appeals of Texas, San Antonio.

June 3, 1992.

Kenneth L. Clark, Norma Gonzales, Clark & Gamble, San Antonio, for relator.

Rene R. Barrientos, Law Offices of Rene R. Barrientos, Timothy Patton, Pozza & Patton, San Antonio, for respondent.

## RELATOR'S PETITION FOR WRIT OF MANDAMUS IS DENIED

CHAPA, Justice.

This case is being considered en banc on the court's own motion.

This is an original mandamus proceeding in which the relator, Hartford Accident and Indemnity Company, asks this court to order the respondent, Honorable Amado Abascal, to set aside his orders striking Hartford's First Amended Answer and disbursing $10,000.00 into the registry of the court.

The case arose from a workers' compensation action brought by real party in interest, Raul Flores, Jr., wherein Flores alleges he slipped and fell at work in the Zavala County Jail in May of 1989. Hartford filed a general denial. Because of what the trial court considered to be a pattern of abuses of the discovery process during pretrial activities, the trial court struck Hartford's First Amended Answer which was filed just nineteen days before the case was set for jury trial and in which Hartford alleged several affirmative defenses for the first time. The trial court also ordered the disbursement of $10,000.00 to Flores' counsel which had been placed into the registry of the court as sanctions. These two orders are the subject of this mandamus proceeding.

Hartford presents ten points of error in its original petition and five points of error in its supplemental petition and brief, filed after the trial court made its findings of fact and conclusions of law at the request of this court. The essence of Hartford's complaints is that the sanctions were unjust under *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991),

and *Braden v. Downey*, 811 S.W.2d 922 (Tex.1991).[1]

Generally, "[m]andamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law" and "[t]he court of appeals, therefore, acts in excess of its writ power when it grants mandamus relief absent these circumstances." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

"It is well established Texas law that an appellate court may not deal with disputed areas of fact in an original mandamus proceeding." *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex.1990), citing *West v. Solito*, 563 S.W.2d 240, 245 (Tex.1978); *Dikeman v. Snell*, 490 S.W.2d 183, 186–87 (Tex.1973). A "hearing on the motion for sanctions [is] akin to a nonjury trial," in which "the trial court is the judge of the credibility of the witnesses and of the weight to be given their testimony, since the judge has the opportunity to observe the demeanor of the witnesses on the stand and may believe all, none, or part of the witnesses' testimony"; thus, "[t]he trial court's findings of fact will not be disturbed on appeal if supported by any evidence of probative force." *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex.App.—Dallas 1989, writ denied). "In determining whether a trial court has abused its discretion [in a sanctions appeal], we are required to view the evidence in the light most favorable to the trial court's action, and to indulge every legal presumption in favor of the judgment." *Vaughn v. Texas Employment Comm'n*, 792 S.W.2d 139, 143 (Tex.App.—Houston [1st Dist.] 1990, no writ), citing *Parks v. U.S. Home Corp.*, 652 S.W.2d 479, 485 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). Further, reasonable "[i]nferences may be drawn from actual facts proved" by the trier of the facts. *Beazley*

*v. McEver*, 238 S.W. 949, 952 (Tex.Civ. App.—Dallas 1922, no writ).

The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–43 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984). Rather, a trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Downer*, 701 S.W.2d at 241–43; *Cessna Aircraft*, 665 S.W.2d at 443; *Bush v. Vela*, 535 S.W.2d 803, 805 (Tex.Civ.App.—Corpus Christi 1976, no writ); *King v. Guerra*, 1 S.W.2d 373, 376 (Tex.Civ.App.—San Antonio 1927, writ ref'd). The trial court is free, however, to consider the entire record of the case up to and including the motion to be considered. *Downer*, 701 S.W.2d at 241. Thus, the trial court is not limited to considering only the specific violation committed but is entitled to consider other matters which have occurred during the litigation. *Id.*

In ascertaining whether the trial court abused its discretion, the reviewing court must determine if the trial court acted without reference to any guiding rules and principles. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986). In a mandamus action, "[t]he relator who attacks the ruling of the trial court as an abuse of discretion labors under a heavy burden to establish under the circumstances of the case, that the fact and law permit the trial court to make but one decision."[2] *Blasingame v. Krueger*, 800 S.W.2d 391, 393 (Tex.App.—Houston [14th Dist.] 1990, no writ), citing *Johnson*, 700 S.W.2d at 917.

1. Hartford does contend in one point of error that the trial court abused its discretion in requiring the completion of a deposition of a nonparty witness contrary to the provisions of Rule 201 of the Texas Rules of Civil Procedure, and on matters privileged, irrelevant to, and inadmissible in Flores' case-in-chief. We decline to address this issue because this mandamus petition was ordered filed only to review the propriety of the sanctions.

2. Additionally, we emphasize that the burden is on the relator to see that a sufficient record is presented to show error requiring reversal. Tex.R.App.P. 50(d).

On October 16, 1991, the Texas Supreme Court published *TransAmerican,* 811 S.W.2d 913, and *Braden,* 811 S.W.2d 922, establishing rules and principles which must guide the trial court in the exercise of sound discretion when imposing "death penalty" sanctions for discovery abuse.

In *TransAmerican,* the supreme court granted mandamus relief to a party whose pleadings were struck, whose cause of action was dismissed, and against whom a default judgment was granted based on a counterclaim, reserving only the issue of damages. *Id.* The sanctions had been imposed by the trial court upon the relator as a result of discovery abuse. The supreme court held that mandamus lies:

> when a trial court imposes discovery sanctions which have the effect of precluding a decision on the merits of a party's claims—such as by striking pleadings, dismissing an action, or rendering default judgment—a party's remedy by eventual appeal is inadequate, unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment.

*Id.* at 920.

The court established standards which "set the bounds of permissible sanctions under Rule 215 within which the trial court is to exercise sound discretion ..." in granting a just sanction order. *Id.* at 917 (footnote omitted). The court held that in order for a sanction to be just, 1) it "must be directed against the abuse and toward remedying the prejudice caused the innocent party," which means that "the sanction should be visited upon the offender" requiring "the trial court [to] at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both"; 2) and, it "must not be excessive," which means that "[t]he punishment should fit the crime" requiring that "courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully

promote compliance." *Id.* Pertaining to "death penalty" sanctions, the court stated:

> [w]hen a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery. '[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause.'

*Id.* at 918 (citations omitted).

The court refused to require the trial judge to justify its ruling, but did make the following recommendation in order to aid the appellate courts in their efforts to determine the propriety of the sanctions imposed:

> The district court made no findings to support the sanctions imposed. Rule 215 does not require a trial court to make findings before imposing discovery sanctions, and we do not add such a requirement here. We note only that we do not have the benefit of any explanation by the district court for the severity of its ruling. It would obviously be helpful for appellate review of sanctions, especially when severe, to have the benefit of the trial court's findings concerning the conduct which it considered to merit sanctions, and we commend this practice to our trial courts....

*Id.* at 919 n. 9 (citations omitted).

Thus, in *TransAmerican,* although the supreme court set out guiding principles for the trial court to consider when exercising its discretion in imposing "death penalty" sanctions, it nevertheless left the matter to the sound discretion of the trial court.[3] *Id.* at 917.

■ If any doubt was created by *TransAmerican* as to what standard of review is proper in a mandamus proceeding, the Texas Supreme Court, in an opinion dated Feb-

---

3. We emphasize that the court stated that "[t]hese standards set the bounds of permissible sanctions under Rule 215 within which the trial court is to exercise *sound discretion.*" *Id.* (footnote omitted; emphasis added).

ruary 19, 1992, reiterated that abuse of discretion is still the standard of review in all mandamus proceedings, and clarified the standard further:

> Traditionally, the writ of mandamus issued only to compel the performance of a ministerial act or duty....
>
> Since the 1950's, however this Court has used the writ to correct a 'clear abuse of discretion' committed by the trial court....
>
> A trial court clearly abuses its discretion if 'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.' *Johnson v. Fourth Court of Appeals*, 700 S.W.2d at 917. This standard, however, has different applications in different circumstances.
>
> With respect to resolution of factual issues or matters committed to the trial court's discretion, for example, the reviewing court may not substitute its judgment for that of the trial court.... The relator must establish that the trial court could reasonably have reached only one decision.... Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable....
>
> On the other hand, review of a trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ....

*Walker v. Packer*, 827 S.W.2d 833, 839–40 (1992) (citations omitted).

Therefore, the dispositive issue as to the trial court's order striking Hartford's First Amended Answer is whether the relator has complied with its burden of establishing that the trial court abused its discretion considering the rules and principles announced in *TransAmerican*. *Walker* at 839; *TransAmerican*, 811 S.W.2d at 917;

*Johnson*, 700 S.W.2d at 917. Mandamus must be denied if the relator has failed in that burden even if we should individually or collectively conclude that under the same circumstances, we would have imposed different or lesser sanctions. *Walker* at 839; *Downer*, 701 S.W.2d at 241–43; *Cessna Aircraft Co.*, 665 S.W.2d at 443.

In making this determination, great care must be taken not to improperly impose upon the trial court the burden of justifying its ruling, but to remain cognizant that the rules unquestionably place the burden upon the relator to present a record to this court which clearly shows that the trial court abused its discretion. *Johnson*, 700 S.W.2d at 917; *Blasingame*, 800 S.W.2d at 393; Tex.R.App.P. 50(d). Thus, because the trial court in mandamus proceedings is not required to justify its ruling, the supreme court specifically refused to require the trial court to submit findings of fact and conclusions of law in these matters, but opted instead to merely "commend this practice to our trial courts." *TransAmerican*, 811 S.W.2d at 919 n. 9.

Moreover,

> [t]he trial judge, as the trier of the fact, may draw reasonable inferences from the evidence, and his findings of fact may not be disregarded on appeal if the record contains some evidence of probative value from which these inferences may be drawn, or unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong.

*IFG Leasing Co. v. Ellis*, 748 S.W.2d 564, 565–66 (Tex.App.—Houston [1st Dist.] 1988, no writ), citing *Nicholas v. Crocker*, 687 S.W.2d 365, 367 (Tex.App.—Tyler 1984, writ ref'd n.r.e.).

"The trial judge as the trier of fact may take into consideration all the facts and surrounding circumstances in connection with the testimony of each of the witnesses tendered, and to arrive at his conclusions as to the facts controlling this case," and "may accept or reject all or any part of the testimony of the witness tendered." *Valencia v. Garza*, 765 S.W.2d 893, 895 (Tex. App.—San Antonio 1989, no writ), citing

*Electro–Hydraulics Corp. v. Special Equipment Eng'rs, Inc.,* 411 S.W.2d 382, 386–87 (Tex.Civ.App.—Waco 1967, writ ref'd n.r.e.). "Thus, unless there is no evidence to support the finding or unless the findings are so contrary to the great weight and preponderance of the evidence as to be clearly wrong, the appellate court may not set it aside." *Valencia,* 765 S.W.2d at 896.

The Texas Supreme Court has also held that:

> [i]n determining whether the trial court's findings are supported by any evidence of probative value, we will give credence only to the evidence favorable to the findings and will disregard all evidence to the contrary. The findings of fact and conclusions of law will be construed together; and if the findings of fact are susceptible of different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it.

*Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299, 301 (Tex.1963).

Among other things, the record before us reflects the following evidence and reasonable inferences which the trial court was free to believe:

1) On the 6th of August, 1990, the plaintiff below filed a workers' compensation appeal against relator, claiming compensable injuries sustained on the 29th day of May, 1989, to which relator filed a general denial shortly thereafter.

2) On the 22nd day of October, 1990, the relator responded under oath to the interrogatories of the plaintiff below through their insurance adjuster employee, Girdy S. Jones, described therein as follows: "personally appeared GIRDY S. JONES, duly authorized agent for THE HARTFORD INSURANCE GROUP, Defendant in the above styled and numbered cause, who being by me duly sworn on her oath, deposed and stated that she has read the foregoing document, and stated that the information contained therein is true and correct, and is based upon her personal knowledge."

a) In their response, relator generally denied, among other things, that the plaintiff below had sustained any disability as a result of the accident on the date in question, and assert that any disability was due to other accidents or conditions, that plaintiff had failed to timely report a compensable injury, and that the plaintiff continued to work on a full-time basis after the alleged incident until October 10, 1989.

b) Relator also responded that although some medical bills had been paid, relator did not agree to pay any others, and that information was being gathered on the matter of wage rates.

c) Although Girdy S. Jones signed as the "duly authorized agent" for relator and responded under oath on behalf of relator "based upon her personal knowledge," she failed to include herself as a person with relevant facts "to Plaintiff's claim or Defendant's defense to the lawsuit." The record fails to reflect that the relator ever included her as a person with knowledge of relevant facts, but it does reflect that the plaintiff below later included her as a person with knowledge of relevant facts.

3) On December 18, 1990, the trial court entered an order setting the cause for trial before a jury on March 11, 1991.

4) On January 7, 1991, the trial court was required to order relator to produce relator's claim file on the plaintiff below through July 26, 1990 within ten days because relator had refused to provide it through a request for production. Although the record reflects that a copy of the file was delivered to the plaintiff below on January 14, 1991, it was discovered, when Girdy Jones was finally deposed on March 5, 1991, that several pages from the original file were not included in the copy furnished to the plaintiff.

5) On February 5, 1991, a subpoena was issued for the purpose of taking Girdy Jones' deposition on the 12th day of February, 1991 in Eagle Pass, which was amended on the 6th to reflect that the deposition was to be taken in Crystal City where the suit had been filed.

6) On February 7, 1991, relator filed a motion to quash the subpoena and protective order, alleging among other things, that Girdy Jones had no personal knowledge of any relevant facts material to the case, and that the deposition was for purposes of harassment.

7) On February 11, 1991, relator advised the plaintiff's counsel by telecopy that for various reasons Girdy Jones was not going to be present on February 12, 1991 in Crystal City for the deposition.

8) On February 12, 1991, the day of the Jones' deposition, relator filed an amended motion to quash the subpoena for Jones' deposition, contending that the deposition should be taken in Houston, the place of Jones' residence. An affidavit by Jones was also filed which claimed that she had not been designated as a person having knowledge of relevant facts.

9) At a hearing held February 12, 1991 on relator's motion to quash plaintiff's subpoena to Jones and for a protective order, relator's attorney argued at the beginning of the hearing that Jones had no knowledge of relevant facts. The attorney then proceeded to testify wherein he admitted on cross examination that Jones had answered the interrogatories for relator as its agent and as a person having knowledge of the facts recited therein, that Jones had attended a January 7, 1991 hearing in the same case and testified on behalf of relator, and that Jones was the adjuster in the case and had taken statements by the plaintiff and the plaintiff's supervisor, Adolph Guerrero. At the end of the hearing, relator's attorney argued that the issue no longer was whether Jones had knowledge of relevant facts, but whether the deposition should be taken in Houston.

10) The motion to quash and for protective orders was denied, and Jones' deposition was reset for February 21, 1991 in Crystal City since Jones had failed to respond to the subpoena.

11) Mandamus was sought in this court on February 19, 1991, and leave to file was denied on February 20, 1991.

12) On February 20, 1991, nineteen days before the case was set for jury trial, relator filed the first amended answer in question, alleging affirmative defenses for the first time, including notice, other accidents, wage rates, and lump sum. Consequently, because this amended answer was filed so close to the trial date, it made it impossible for the plaintiff to supplement his interrogatory answers to deal with the newly alleged affirmative defenses thirty days before trial as required by TEX.R.CIV.P. 166(b)(6), and affected the trial court's docket by casting doubt that the trial date would be met.[4]

13) When the deposition of Girdy Jones was finally taken on February 21, 1991, Jones was repeatedly instructed by relator's attorney not to answer questions generally pertaining to the affirmative defenses, her investigation of the case, and what she meant by her own notes. As a result, a subsequent hearing was required on the questions that were certified to the court. However, Jones nevertheless testified during the deposition that she had taken the statements of the plaintiff and his supervisor, Adolfo Guerrero, on April 11, 1990 and that her notes in relator's workers' compensation file reflected the following:

that there was a riot at the jail where the plaintiff was working on Memorial Day 1989; that as a result of the riot, the floor was covered with water; that the plaintiff fell when he returned from investigating what had occurred; that the plaintiff stayed at home for two days thereafter; that "less than a month later, he complained about his back"; and, that the plaintiff never

4. Since the record clearly reflects appellant was aware of its alleged affirmative defenses prior to the time the trial court set the trial date and chose not to allege its defenses until just nineteen days before the trial date, it was not unreasonable for the trial court to consider the timing of the amended answer as another delaying obstructionist tactic, which would affect its docket. This is reflected in the trial court's findings of fact numbers four and five which find the appellant guilty of "discovery abuse and obstructionist tactics."

told anyone about any other accident which might possibly have hurt his back. Jones' notes also contained her notation that "he [the plaintiff] reported the incident," however this notation was scratched out, and she could not explain why. Jones' notes further stated that "according to the information to date, it appears that we do owe for this," which she failed to explain due to relator's counsel's instruction.

14) On March 5, 1991, seven days before the trial date, a hearing was held on the certified questions from the deposition of Girdy Jones, and on Plaintiff's motion for sanctions. Before the hearing, relator agreed to stipulations on wage rates. After the hearing, the court issued the sanction order in question, striking relator''s First Original Answer, ordering that the certified questions be answered by March 8, 1991, and that relator pay $10,000.00 attorneys' fees into the registry of the court.

15) Mandamus relief was sought and on June 19, 1991; the Texas Supreme Court denied the petition, suggesting instead that the trial court be allowed the opportunity to reconsider the ruling of which relator complained in light of *TransAmerican* and *Braden*.

16) On July 15, 1991, the trial court held a hearing to reconsider its prior ruling as suggested by the supreme court. Taking the matter under considerable advisement, the trial court denied the motion for reconsideration on August 27, 1991, and ordered disbursement of the $10,000.00 previously paid into the registry of the court.

17) Thereafter, as a result of a mandamus action filed in this court, the trial court responded to the order of this court, submitting findings of fact and conclusions of law which covered the requirements of *TransAmerican*.

Considering the entire record, the trial judge submitted the following findings of fact and conclusions of law to this court in compliance with this court's request:

Findings of fact:

1. Hartford Accident & Indemnity Company ["Hartford"] has been directly responsible for a pattern of abuse of the discovery process.

2. Hartford's pattern of discovery abuse included, but was not limited to, violations of court orders on discovery.

3. Hartford's discovery abuse was committed willfully and in bad faith.

4. Hartford has engaged in a pattern of discovery abuse and obstructionist tactics designed to conceal evidence contrary to the insurer's affirmative defenses in its amended answer.

5. In light of the pattern of discovery abuse and obstructionist tactics, the only sanction which would be effective against Hartford is striking the insurer's affirmative defenses.

6. Hartford's counsel was not responsible for the discovery abuse committed by the insurer.

7. Hartford's discovery abuse has prejudiced Raul Flores, Jr., ["Flores"] and his counsel.

8. As a result of Hartford's discovery abuse, counsel for Flores was required to expend a substantial amount of time and effort in travel, court appearances and preparation directly related to that abuse.

9. Flores is entitled to recover $10,000.00 from Hartford as reasonable and necessary attorney's fees and expenses directly related to Hartford's discovery abuse.

10. The attorney's fees and expenses assessed against Hartford will not significantly impair Hartford's willingness or ability to continue the litigation.

Conclusions of law:

1. Hartford's amended answer should be and has been stricken as a sanction for the insurer's discovery abuse.

2. A direct relationship exists between Hartford's discovery abuse and the sanctions imposed.

3. Since Hartford was directly responsible for the discovery abuse, the sanctions should be imposed against the insurer.

4. The sanction of striking the insurer's amended answer is not excessive because Hartford acted in flagrant bad faith and lesser sanctions would be ineffective.

5. Based on Hartford's refusal to produce material evidence, a presumption has been invoked that the insurer's affirmative defenses lack merit.

6. The sanction imposed against Hartford serves the purposes of discovery sanctions by punishing a party that has violated the rules of discovery.

7. The sanction imposed against Hartford serves the purposes of discovery sanctions by deterring other litigants from violating the discovery rules.

8. Hartford, as a result of its discovery abuse, should be required to pay and has paid $10,000.00 as reasonable and necessary attorney's fees and expenses to Flores.

9. The $10,000.00 in sanctions assessed against Hartford is directly related to the reasonable and necessary attorney's fees and expenses of Flores caused by Hartford's discovery abuse.

10. The attorney's fees and expenses assessed against Hartford will not significantly impair Hartford's willingness or ability to continue the litigation.

11. The sanctions imposed against Hartford are authorized by *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991); *Braden v. Downey,* 811 S.W.2d 922 (Tex. 1991); and *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839 (Tex.1986); therefore, the sanctions were properly imposed and the motion for reconsideration was properly denied.

Thus, this record, viewed under the applicable standards, reveals that the trial court was made aware of the guiding principles in *TransAmerican* by the supreme court; that the trial court gave due consideration to the requirements enumerated in *TransAmerican,* as directed by the supreme court, by granting a hearing on a motion to reconsider and taking the matter under advisement for almost a month and a half prior to ruling; that the trial court again gave due consideration to the requirements enumerated in *TransAmerican* upon this court's subsequent request for findings of fact and conclusions of law; that the trial court complied with the request of this court, submitting findings of fact and conclusions of law adequately covering all the requirements of *TransAmerican;* that there is sufficient evidence and reasonable inferences of probative force in this record, which the trial judge was free to believe, to support all the findings of fact and conclusions of law and to sustain the sanctions order; that the "findings are [not] so contrary to the great weight and preponderance of the evidence as to be clearly wrong"; that the appellant has failed to show that no "direct relationship ... exists between the offensive conduct and sanctions imposed" since the pleadings struck contained the late filed affirmative defenses, which were directly connected to the offensive conduct; that the appellant failed to show that the sanctions imposed were excessive considering the totality of the record and the effect upon the trial setting and court's docket; and, that the relator has failed in its burden of establishing a clear abuse of discretion. *Walker* at 840; *TransAmerican,* 811 S.W.2d at 917; *Valencia,* 765 S.W.2d at 893; *IFG Leasing Co.,* 748 S.W.2d at 565–66. Consequently, this court has no alternative but to deny the mandamus, unless it erroneously substitutes its judgment for that of the trial court.

The dissent oversimplifies upon concluding that the issue here is "whether the sanctions were just," leaving the improper impression that this court may substitute its judgment for that of the trial court. The prohibition against an appellate court substituting its judgment for the judgment of the trial court is long standing and

based on considerable logic. The trial court is better situated to consider the many factors that participate in the making of such a ruling, which completely escape the appellate court since it deals purely with a cold record of words. Thus, these considerations gave rise to the necessity for great deference to the trial court in such matters, bringing about the abuse of discretion standard of review which exists today. *Walker* at 839–40; *Brady,* 795 S.W.2d at 714; *Downer,* 701 S.W.2d at 241–43; *Cessna Aircraft Co.,* 665 S.W.2d at 443.

The dissent appears to find comfort in substituting its judgment for the judgment of the trial court by noting that in *Trans-American* "the supreme court did not explicitly conclude that the trial court abused its discretion." However, it must not be ignored that in addition to leaving the matter to the discretion of the trial judge, the supreme court also found that "the record before [them] establish[ed] that the severe sanctions the district court imposed against TransAmerican were *manifestly unjust* in violation of Rule 215," which is not inconsistent with the abuse of discretion standard of review under the circumstances of the case.[5] *TransAmerican,* 811 S.W.2d at 919 (emphasis added). Nevertheless, the dissent goes further, and without regard for the "manifest" aspect, simply concludes that since the dissent does not find the sanctions "just," the trial court is subject to mandamus.

The dissent expands on the holding of *TransAmerican* in suggesting that *TransAmerican* authorizes mandamus in all cases where the trial court strikes pleadings without first imposing what the dissent considers to be lesser sanctions."[6] *TransAmerican* merely holds that the trial court should *consider* lesser sanctions prior to striking the pleadings, and this is apparent in the following language: "It follows that courts must *consider* the availability of less stringent sanctions" and "there is nothing in the record to indicate that the district court *considered* imposition of lesser sanctions." *TransAmerican,* 811 S.W.2d at 917–18 (emphasis added). Here, the court's Findings of Fact No. 5 clearly reflects that the court considered lesser sanctions and concluded that they would not be appropriate.

Apparently unable to find that there is no support in the record for the trial court's findings or that the findings are so contrary to the great weight and preponderance of the evidence as to be clearly wrong[7] and further, recognizing that great deference must be paid to the trial judge's findings of fact,[8] the dissent appears content to justify its holding by suggesting that the dispositive issue here is controlled by *Walker* and involves a defective legal conclusion which should be "reviewed with limited deference to the trial court." *Walker* at 840. However, the legal conclusion which the supreme court found "to be reviewable with limited deference to the trial court" in *Walker,* was "the trial

---

5. The requirement that trial judges follow the guiding principles announced by the supreme court in *TransAmerican* obviously did not exist prior to *TransAmerican.* Therefore, it is not surprising that in *TransAmerican,* the trial judge did not follow these guiding principles. Thus, it should not be surprising that the supreme court found that the severe sanctions imposed were "manifestly unjust." Accordingly, the finding of the supreme court was consistent with the abuse of discretion standard of review announced in *Morrow,* 714 S.W.2d at 298.

In the case before us, the rules and principles announced in *TransAmerican* were not only specifically made known to the trial court by the supreme court but also, the trial court was instructed to follow them upon reconsideration. Moreover, the record reflects that the trial court granted a reconsideration hearing, took the mat-

ter under advisement for over a month, made its ruling, and supplied findings of fact and conclusions of law supporting the requirements of *TransAmerican.*

6. The concurring opinion suggest a reasonable view that the sanctions imposed here were, in fact, "lesser sanctions" and not "death penalty" sanctions, since relator's initial pleading remained intact. However, we conclude that this mandamus should be denied regardless of whether the sanctions are considered "death penalty" sanctions or not.

7. *Electro–Hydraulics Corp.,* 411 S.W.2d at 386–87.

8. *Walker* at 839–40.

court's erroneous denial of the requested discovery on the sole basis of *Russell*," [9] which the supreme court found was clearly "distinguishable" and not applicable in the *Walker* case. *Id.* at 839–40.

In the present case, the dissent completely fails to point out which legal conclusion of the trial court is defective and why. Further, it is uncontradicted in this case that the guiding rules and principles announced in *TransAmerican* are applicable, since the supreme court and this court instructed the trial court to follow them and to provide findings of fact and conclusions of law in accordance with those principles. Moreover, the trial court complied with the supreme court's instructions. Consequently, there is no basis to justify the dissent's granting the mandamus based either on the "limited deference" (conclusions of law) or the "great deference" (findings of fact) aspect of the abuse of discretion standard of review. *Walker* at 840.

Ironically, all the mandamus cases the dissent cites to for authority applied the abuse of discretion standard. Further, the dissent misplaces reliance on *Welex v. Broom*, 823 S.W.2d 704 (Tex.App.—San Antonio 1992, writ requested), which is clearly distinguishable from the case before us.

In *Welex*, 1) the appeal before this court was not a mandamus proceeding, but an appeal from the merits; 2) the trial court imposed the sanctions in question prior to *TransAmerican*, completely unaware of the requirements the supreme court was about to impose upon trial courts; 3) the sanctions affected the trial on the merits, which also took place prior to *TransAmerican;* 4) the record clearly reflected from the trial court's own remarks that the trial judge had not followed the requirements of *TransAmerican;* and, 5) since the sanction order had a considerable effect on the trial on the merits, reversal was required.

In this case, 1) we have a mandamus proceeding rather than an appeal from the merits; 2) although the trial court imposed sanctions prior to *TransAmerican*, the supreme court directed the trial court to re-

consider its sanctions in light of *TransAmerican* prior to the trial on the merits; 3) in compliance with the directive of the supreme court, the trial court held a hearing to reconsider the sanctions in light of *TransAmerican*, took the matter under advisement for about a month and a half, during which time we must presume it reconsidered the sanctions and then denied the motion for reconsideration; 4) in response to the orders of this court, the trial court again reconsidered its sanctions, submitting findings of fact and conclusions of law to this court supporting all the requirements of *TransAmerican;* and, 5) the trial on the merits has not taken place.

Further, in *Welex*, as a direct result of the remarks of the trial court, which were quoted from the record, this court held:

> The trial court imposed the most devastating sanctions a trial court could assess against a party without assuring that the sanctions were 'visited upon the offender,' and failed to consider 'less stringent sanctions and whether such lesser sanctions would fully promote compliance.' *TransAmerican*, 811 S.W.2d at 917. Further, '[i]n the present case, as in *TransAmerican*, it appears lesser sanctions should have been imposed first.' *Jaques v. Texas Employers Ins. Assn.*, 816 S.W.2d 129, 131 (Tex. App.—Houston [1st Dist.] 1991, no writ).

*Welex*, 823 S.W.2d at 710. Clearly, although the opinion recognizes that it appeared that lesser sanctions should have been imposed, the holding is based on the record, which discloses that the trial court failed to visit the sanctions upon the offender, and failed to consider lesser sanction as required by *TransAmerican*.

However, in an effort to justify its holding, the dissent focuses entirely on the statement that "it appear[ed] that lesser sanctions should have been imposed first," ignoring completely the real basis for the holding supported by the record. By relying on this statement out of context, the dissent strains in its attempt to justify what it has done in the reverse, that is,

**9.** *Russell v. Young*, 452 S.W.2d 434 (Tex.1970).

base its holding on what sanctions it perceives the trial judge should have imposed, rather than whether the relator has complied with its burden of clearly showing that the trial court abused its discretion. Consequently, the dissent reiterates what it perceives to be its new found authority and erroneously substitutes its judgment for that of the trial court. Thus, *Welex* is not controlling, and mandamus is improper here.

The dissent accuses us of encouraging "sanction gamesmanship" and "chill[ing] vigorous advocacy" for applying the time honored abuse of discretion standard of review. What the dissent has completely forgotten is what brought about the necessity for discovery abuse sanctions in the first place. The dissent should recall that discovery abuse sanctions became necessary after "vigorous advocacy" led to "discovery gamesmanship" that prolonged the trial process and played havoc with the trial court's dockets. The trial is a search for the truth, which is not found by hiding it, and discovery gamesmanship has been used far too often to hide the truth. Nevertheless, we are bound to follow the abuse of discretion standard of review, which is what we have done here.

Finally, the dissent invokes due process in a final effort to justify substituting its judgment for that of the trial court. If due process is violated by striking the pleadings of a party, then 1) TEX.R.CIV.P. 215(2)(b) violates due process, 2) this sanction would never be available to the trial court, and 3) the supreme court would have held accordingly; however, no one contends this is the case. Certainly, due process is either violated or it is not. Due process cannot be determined by degrees, nor can it be used to justify hiding the truth, eliminating the abuse of discretion standard of review for mandamus cases, or substituting the judgment of the appellate court for that of the trial court.

■ The issue of whether mandamus is proper with regard to the court's order to disburse the $10,000.00, which has been placed into the registry of the court, is controlled by *Walker,* 827 S.W.2d 833, and *Braden,* 811 S.W.2d 922.

In *Braden,* the supreme court granted mandamus relief to a party and its attorney who had been sanctioned by the trial court for discovery abuse. *Braden,* 811 S.W.2d at 922. The trial court had ordered the relator to pay the amount of $10,000.00 to the party seeking discovery, and the relator's attorney was ordered to perform ten hours of community service. The deadlines for the sanctions imposed both on the relator and the attorney preceded the conclusion of the litigation.

With regard to the imposition of monetary sanctions, the supreme court stated that "[i]f the imposition of monetary sanctions threatens a party's continuation of the litigation, appeal affords an adequate remedy only if payment of the sanctions is deferred until final judgment is rendered and the party has the opportunity to supersede the judgment and perfect his appeal." *Id.* In this respect, the supreme court adopted the solution enunciated by the Fifth Circuit:

> We ... believe that the imposition of sanctions must not result in total, or even significant, preclusion of access to the courts.... However, if a district court imposes monetary sanctions that are made payable prior to the entry of a final appealable order, a litigant may suffer a substantial restriction on his access to the courts. Financially strapped because of the sanctions award, a litigant is unable to proceed with his case on the merits. To avoid this harsh, inequitable scenario, we conclude that *if a litigant contends that a monetary sanction award precludes access to the court, the district judge must either (1) provide that the sanction is payable only at a date that coincides with or follows entry of a final order terminating the litigation; or (2) makes express written findings, after a prompt hearing, as to why the award does not have such a preclusive effect.* (Emphasis added.)

*Id.,* citing *Thomas v. Capital Sec. Serv., Inc.,* 836 F.2d 866, 882–83 n. 23 (5th Cir. 1988) and *Schaffer v. Iron Cloud, Inc.,* 865

F.2d 690, 691 (5th Cir.1989) (per curiam). Finally, the supreme court concluded that the trial court "must modify its order at least to allow" both relator and his attorney "an opportunity to appeal before such sanctions" are executed. *Braden,* 811 S.W.2d at 930.

In determining whether the order disbursing $10,000.00 to Flores' counsel was appropriate, the question is whether Hartford has an adequate remedy by appeal. *Walker* at 840; *Braden,* 811 S.W.2d at 929. If not, the appropriate remedy is to direct the trial court to modify its order so payment of the money is deferred until final judgment is rendered. *Braden,* 811 S.W.2d at 930–31.

In the case at hand, Hartford did not maintain in the trial court, and has not argued to this court, that the immediate payment of the monetary sanction would significantly impair its ability to continue with this litigation. Hartford only argues that the evidence does not show that the payment of the monetary sanction would not restrict its access to the court. We note that Hartford had the opportunity to present this contention to the trial court on reconsideration of the sanctions following the issuance of the *Braden* opinion, and failed to do so. Hartford has failed to show that it has no adequate remedy at law with regard to the monetary sanction, which requires that mandamus relief be denied.

Writ of mandamus is denied.

BIERY, Justice, concurring.

I write for the purpose of noting that the trial judge did impose a lesser sanction in that only the first amended answer was struck. This pleading, filed nineteen days before trial, raised affirmative defenses for the first time. My understanding of the record and our ruling is that Hartford's original answer is now the live defensive pleading; therefore, the plaintiff still must meet its burden of proof on the merits. Thus, this case is not a "death penalty default judgment" sanction as in *Trans-American* and *Downer.* Further, and aside from the discovery sanction issues,

the assertion of affirmative defenses for the first time nineteen days before trial raises at least a question of fairness and surprise under Rule 63 of the Rules of Civil Procedure. If the affirmative defenses were truly important to reaching a just verdict, it would appear logical the defense would assert them early in the pleading process rather than slip them in at a time when the worthy opposition would have a less adequate opportunity to prepare.

Cases which ultimately must be litigated should be tried on the merits by vigorous and fair advocacy, not through discovery gamesmanship. *TransAmerican* at 920, 922 (concurring opinions of Gonzalez, J. and Mauzy, J.). Review of discovery sanctions must necessarily be based on the particular facts and circumstances of each case. *See TransAmerican* at 919 (majority opinion of Hecht, J. limiting *Downer* to its particular facts). While it is an unusual case which justifies the imposition of severe discovery sanctions before utilizing lesser sanctions, there is nothing in *Trans-American* which prohibits such action if the record supports it.

For these additional reasons and because I agree with the majority's analysis of the standard of review and the sufficiency of the record to support the trial court's limited action, I concur in the denial of mandamus relief.

BUTTS, Justice, dissenting.

Did the trial court justly deny Hartford its day in court to present affirmative defenses solely on the basis that it objected to, but complied with, discovery? The majority holds that the trial court acted within its discretion. Because I believe this holding does not comply with the constitutional due process dictates of *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991), and a trial court does not have discretion to act other than by due process of law, I dissent.

Raul Flores, Jr., brought this workers' compensation action claiming he suffered an injury when he fell at work in the Zavala County Jail in May 1989. Hartford filed a general denial. During pretrial discovery

in October 1990, Flores' interrogatories were answered by Girdy Jones, a claims adjuster for Hartford. According to Jones' answers, Flores did not report the accident to his supervisor, Adolfo Guerrero, until October 1989. She also said that Flores worked after the alleged incident until October 1989. Flores requested that Hartford produce its entire claim file. Hartford objected to this discovery request. In January 1991 the trial court ordered Hartford to turn the file over to Flores, except for information about reserve amounts. Hartford produced the file.

Within the claim file was a transcription of a recorded statement of Guerrero taken by Jones in April 1990, which contradicted Jones' interrogatory answers. Specifically, in the statement, Guerrero said that Flores did not report the incident to him because he saw Flores fall, Flores did not work the next day, and Flores reported the accident to jail administration within a week of the occurrence.

Flores filed a notice of deposition for Jones to be taken on February 12, 1991, in Zavala County. Hartford filed a motion to quash the deposition, arguing that because Jones was not a party witness she had to be deposed in her county of residence, Harris County. On February 11, 1991, Hartford's attorney told Flores' attorney that Jones would not appear. On February 12, 1991, the trial court heard the motion to quash the deposition and denied it.

On February 20, 1991, three weeks before trial was scheduled, Hartford filed an amended answer, asserting for the first time affirmative defenses, including lack of notice to the employer within thirty days, post-accident injury, and denial of the wage rate alleged by Flores. The next day, Jones was deposed.

During the deposition, Hartford's attorney objected to several questions and told Jones not to answer, asserting lack of relevance and that she was not competent to answer them. The questions related to the affirmative defenses. The questions were certified to the trial court.

Prior to the hearing on the certified questions, Hartford stipulated to the wage rate. Flores filed a motion for sanctions for discovery abuse by Hartford. The court ordered that the Jones deposition questions be answered. At the same hearing, the court granted Flores' motion for sanctions, struck Hartford's amended answer which raised its affirmative defenses, and ordered Hartford to pay $10,000 into the court registry, with the money to be given to Flores' counsel after judgment in the case. Jones answered the certified questions.

Hartford thereafter sought a writ of mandamus from the Texas Supreme Court. The court denied without prejudice the petition for mandamus as having been improvidently granted and remanded the case to the trial court for reconsideration of the sanctions in light of *TransAmerican* and *Braden v. Downey*, 811 S.W.2d 922 (Tex. 1991). *Hartford Accident and Indemnity Co. v. Abascal*, 814 S.W.2d 389 (Tex.1991). After a hearing, the trial court denied Hartford's motion to reconsider the sanctions, and the court ordered the $10,000 to be immediately disbursed to Flores' counsel.

Hartford sought leave to file this petition for writ of mandamus in this court. We ordered the trial court to file findings of fact and conclusions of law since it was not possible from the record to determine the reason for the dismissal as required by *TransAmerican*. The trial court has done so, but the findings do not assist this court in the manner the supreme court envisioned in note nine of *TransAmerican*.[1]

The trial court made the following findings of fact:

1. The majority states, "The trial court is better situated on the scene to invoke the many factors that participate in the making of such a ruling, which completely escape the appellate court since it deals purely with a cold record of words." Hence, footnote nine in *TransAmerican*, and that is why we ordered the trial court to make findings of fact and conclusions of law. This does not impose a burden upon the trial court to justify its decision. Instead, this should be done to assist the appellate court in understanding why such severe sanctions were imposed.

1. Hartford Accident & Indemnity Company ["Hartford"] has been directly responsible for a pattern of abuse of the discovery process.

2. Hartford's pattern of discovery abuse included, but was not limited to, violations of court orders on discovery.

3. Hartford's discovery abuse was committed willfully and in bad faith.

4. Hartford has engaged in a pattern of discovery abuse and obstructionist tactics designed to conceal evidence contrary to the insurer's affirmative defenses in its amended answer.

5. In light of the pattern of discovery abuse and obstructionist tactics, the only sanction which would be effective against Hartford is striking the insurer's affirmative defenses.

6. Hartford's counsel was not responsible for the discovery abuse committed by the insurer.

7. Hartford's discovery abuse has prejudiced Raul Flores, Jr., ["Flores"] and his counsel.

8. As a result of Hartford's discovery abuse, counsel for Flores was required to expend a substantial amount of time and effort in travel, court appearances and preparation directly related to that abuse.

9. Flores is entitled to recover $10,000.00 from Hartford as reasonable and necessary attorney's fees and expenses directly related to Hartford's discovery abuse.

10. The attorneys fees and expenses assessed against Hartford will not significantly impair Hartford's willingness or ability to continue the litigation.

The trial court made the following conclusions of law:

1. Hartford's amended answer should be and has been stricken as a sanction for the insurer's discovery abuse.

2. A direct relationship exists between Hartford's discovery abuse and the sanctions imposed.

3. Since Hartford was directly responsible for the discovery abuse, the sanctions should be imposed against the insurer.

4. The sanction of striking the insurer's amended answer is not excessive because Hartford acted in flagrant bad faith and lesser sanctions would be ineffective.

5. Based on Hartford's refusal to produce material evidence, a presumption has been invoked that the insurer's affirmative defenses lack merit.

6. The sanction imposed against Hartford serves the purposes of discovery sanctions by punishing a party that has violated the rules of discovery.

7. The sanction imposed against Hartford serves the purposes of discovery sanctions by deterring other litigants from violating the discovery rules.

8. Hartford, as a result of its discovery abuse, should be required to pay and has paid $10,000.00 as reasonable and necessary attorney's fees and expenses to Flores.

9. The $10,000.00 in sanctions assessed against Hartford is directly related to the reasonable and necessary attorney's fees and expenses of Flores caused by Hartford's discovery abuse.

10. The attorneys fees and expenses assessed against Hartford will not significantly impair Hartford's willingness or ability to continue the litigation.

11. The sanctions imposed against Hartford are authorized by *Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991); *Braden v. Downey*, 811 S.W.2d 922 (Tex. 1991); and *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839 (Tex.1986); therefore, the sanctions were properly imposed and the motion for reconsideration was properly denied.

Hartford maintains that the sanctions were improper and unjust under *Trans-American* and *Braden*. In response, Flores argues that Hartford engaged in obstructionist tactics in bad faith in an attempt to conceal evidence that contradicted Hartford's affirmative defense. Flores maintains that the sanctions were appropriate. Flores asserts that the following evidence was presented to the trial court to show Hartford's discovery abuse:

1. Hartford, through Girdy S. Jones, filed sworn interrogatory answers denying notice of timely notice of injury even though Jones had personally taken a statement from Flores' supervisor months earlier disproving late notice.

2. Hartford had in its claim file the statement of Flores' supervisor, which had been taken by Jones and directly contradicted her sworn interrogatory answer.

3. Hartford resisted producing the statement and claim file [for] Flores until compelled to do so by the trial court.

4. Hartford filed a motion to quash the deposition of Jones claiming its adjuster lacked personal knowledge of the issues raised by Flores' suit, even though Jones had sworn to Hartford's interrogatory answers "based upon her personal knowledge."

5. Hartford did not produce Jones on the date noticed for her deposition.

6. Hartford filed an amended answer on the day before Jones' deposition, three weeks before trial, denying wage rate even though the carrier had never supplemented its interrogatory answer to provide any wage rate information requested by Flores.

7. Hartford refused to permit Jones to answer questions at her deposition concerning late notice and post-accident injury, claiming those issues were irrelevant, despite the fact that the carrier had raised those defenses in its amended answer filed the previous day.

8. Hartford refused to permit Jones to answer questions about whether Flores had notified his supervisor of his injury or had suffered a post-accident injury even though Jones had previously sworn that she had personal knowledge of those matters.

Concerning the striking of the amended answer, Hartford does not have an adequate remedy on appeal. *TransAmerican v. Powell*, 811 S.W.2d at 920.

The question is whether the sanction was just. *Id.* at 917. This is measured by two standards. There must be a direct relationship between the offensive conduct and the sanction imposed. Just sanctions must not be excessive. That is, a sanction should be no more severe than necessary to satisfy its legitimate purposes. *Id.*

The majority claims the issue is oversimplified in this dissent. On the contrary, the issue is framed in the exact manner in which the supreme court framed it in *TransAmerican*. There the court stated:

> Both paragraphs [2(b)(5) and 3 of Rule 215 of the Texas Rules of Civil Procedure] leave the choice of sanctions to the sound discretion of the trial court. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986). However, paragraph 2(b) explicitly requires that any sanction imposed be 'just'. By referring to paragraph 2(b), paragraph 3 incorporates the same requirement. Thus, whether the district court imposed sanctions under paragraph 2(b) or paragraph 3, *we consider whether those sanctions were just.*

*TransAmerican v. Powell*, 811 S.W.2d at 917 (emphasis added). *See also id.* at 916–17, n. 4 (rule 215 as amended now requires that sanctions be appropriate, but "appropriate" and "just" have become equivalent standards).

The majority's restrictive reading of *TransAmerican* is to the effect that as long as there is evidence of some discovery abuse, the abusive party's pleadings may be struck provided the trial court merely acknowledges lesser sanctions exist.

In doing so, the majority ignores that part of *TransAmerican* in which the supreme court discussed the constitutional due process constraints placed upon such

sanctions.[2] The majority quotes the following sentence from *TransAmerican:* "These standards set the bounds of permissible sanctions under Rule 215 within which the trial court is to exercise sound discretion." *TransAmerican* at 917. But, the very next sentence in *TransAmerican* reads, *"The imposition of very severe sanctions is limited, not only by these standards, but by constitutional due process." Id.* (emphasis added).

The supreme court's discussion of due process limitations which followed in the *TransAmerican* opinion controls the imposition of discovery sanctions that strike pleadings. The supreme court stated, "Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *TransAmerican* at 918 (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 705–06, 102 S.Ct. 2099, 2105–06, 72 L.Ed.2d 492 (1982); *Societe Internationale v. Rogers,* 357 U.S. 197, 209–10, 78 S.Ct. 1087, 1094–95, 2 L.Ed.2d 1255 (1958); *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 350–51, 29 S.Ct. 370, 379–80, 53 L.Ed. 530 (1909)).

"However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it." *TransAmerican* at 918 (citing *Insurance Corp. of Ireland,* 456 U.S. at 705–06, 102 S.Ct. at 2105–06).

"Although punishment and deterrence are legitimate purposes for sanctions, they do not justify trial by sanctions." *TransAmerican* at 918 (citing *Hammond Packing,* 212 U.S. at 350–51, 29 S.Ct. at 379–80).

"Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *TransAmerican* at 918 (citing *National Hockey League v.* *Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976)). *See also TransAmerican* at 918, n. 7.

Due process requires that a case be heard and decided on the merits, unless a party's refusal to produce material evidence creates a presumption, through a tacit admission, that the claim or defense lacks merit. *Insurance Corp. of Ireland v. Compagnie des Bauxites,* 102 S.Ct. at 2106.

In *Braden,* the Texas Supreme Court again discussed the imposition of severe sanctions:

Sanctions which terminate or inhibit the presentation of the merits of a party's claims for decision are authorized by Rule 215. These include exclusion of evidence, striking pleadings, dismissal and default. Rule 215, paragraph 2b(3), (4), (5). The effect of such sanctions is to adjudicate claims or defenses, not on their merits, but on the manner in which a party or his attorney has conducted discovery. We recognize that severe sanctions are sometimes necessary to prevent an abusive party from thwarting the administration of justice by concealing the merits of a case.

*Braden* at 929.

But, the supreme court reaffirmed the due process limitations on severe sanctions:

However, such sanctions must be reserved for circumstances in which a party has so abused the rules of procedure, despite imposition of lesser sanctions, that the party's position can be presumed to lack merit and it would be unjust to permit the party to present the substance of that position before the court.

*Braden* at 929 (citing *TransAmerican* ).

The majority concludes that the due process limitation on very severe sanctions which strike pleadings, discussed at length in *TransAmerican* but given a passing reference in the majority opinion, merely requires the trial court to make a vague

---

**2.** The majority refers to the constitutional due process limitations when it quotes from *TransAmerican,* but the quotation in the majority opinion stops before reaching the supreme court's substantive discussion of these limitations.

finding that "in light of the pattern of discovery abuse," the due process mandate that it has actually *considered* lesser sanctions is satisfied. Neither the majority nor the concurrence address the *due process* limitation, much less point out how the record can support a presumption that Hartford's affirmative defenses lack merit *when Flores received all requested discovery.*

In *TransAmerican,* the supreme court found that nothing in the record indicated that lesser sanctions would not have been effective. *Id.* at 918. The court determined that nothing in the record even approached justification for so severe a sanction. *Id.* at 918–19. The court concluded that the severe sanctions the district court imposed were manifestly unjust in violation of Rule 215.[3] *Id.* at 919. Because the supreme court resolved the case by asking and then answering the question of whether the sanctions were just under Rule 215, the majority in our case implicitly disagrees with the analysis used by the supreme court. Apparently, the majority reasons that the supreme court oversimplified the issue in *TransAmerican.*

In reaching its conclusion the supreme court relied upon the two standards previously discussed in this dissent: a direct relationship between the conduct and the sanction, and whether the sanction was excessive. "These standards set the bounds of permissible sanctions under Rule 215 within which the trial court is to exercise sound discretion." *Id.* at 917.[4] In other words, if a sanction imposed for discovery abuse is more severe than necessary to satisfy its legitimate purposes, then the trial court has exceeded the bounds of permissible sanctions in which the court may exercise sound discretion. This is of particular concern when the sanction precludes a party from presenting the merits of its case. *Id.* at 918. Such sanctions are appropriate and do not violate due process only in response to a party's flagrant bad

faith or counsel's callous disregard for the responsibilities of discovery under the rules. *Id.* at 918. As previously noted, "if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it." *Id.* at 918.

In his concurring opinion in *TransAmerican,* Justice Gonzalez stated:

> [Trial judges] should first issue orders compelling discovery. In all but the most egregious circumstances, other lesser sanctions should be tried first before imposing the ultimate sanction of the 'death penalty' (dismissal of pleadings). Cases should be won or lost on their merits, not on discovery or sanctions gamesmanship.

*Id.* at 920.

Justice Mauzy noted in also concurring in *TransAmerican:*

> Courts must strike a careful balance in imposing sanctions. On one hand, the trial court should make clear that abuse of the discovery process is reprehensible and completely contrary to the orderly administration of justice. On the other hand, the trial court must avoid rulings that would serve to chill vigorous advocacy.

*Id.* at 922.

The Dallas Court of Appeals has succinctly observed, "Dismissal must be a sanction of last, not first, resort." *Hanley v. Hanley,* 813 S.W.2d 511, 513 (Tex.App.— Dallas 1991, no writ).

When a party abusively withholds discovery material, despite the imposition of lesser sanctions, then a trial court acts within its sound discretion in adjudicating the merits of the party's claim or defense by presuming that it lacks merit. However, if a party discloses all requested discovery material, there is no need to engage in any such presumption, because the merits of a claim or defense are readily discer-

---

**3.** Interestingly, the supreme court did not explicitly conclude that the trial court abused its discretion.

**4.** This is the language upon which the majority relies in deciding to abdicate its responsibility to see that death penalty sanctions do not violate rule 215 or the due process clause.

nible. The other party may move for summary judgment if discovery shows a meritless claim or defense. This allows the case to be decided on the merits, in keeping with the constitutional constraints discussed in *TransAmerican.*

The majority correctly points out the wide latitude given a judge in sanctioning those who abuse the discovery process. However, *TransAmerican* makes it quite clear that such a wide latitude and unrestrained discretion do not exist when a sanction precludes a party from presenting its case.

The supreme court recently discussed the abuse of discretion standard in *Walker v. Packer,* 827 S.W.2d 833 (1992). The court compared a trial court's discretion in factual and legal issues.

A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d [916] at 917 [ (Tex.1985) ]. This standard, however, has different applications in different circumstances.

With respect to resolution of factual issues or matters committed to the trial court's discretion, for example, the reviewing court may not substitute its judgment for that of the trial court. *See Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41–42 (Tex.1989) (holding that determination of discoverability under Tex.R.Civ.P. 166b(3)(d) was within discretion of trial court); *Johnson,* 700 S.W.2d at 918 (holding that trial court was within discretion in granting a new trial "in the interest of justice and fairness"). The relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 917. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Johnson,* 700 S.W.2d at 918.

On the other hand, review of a trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no "discre-

tion" in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *See Joachim v. Chambers,* 815 S.W.2d 234, 240 (Tex.1991) (trial court abused discretion by misinterpreting Code of Judicial Conduct); *NCNB Texas National Bank v. Coker,* 765 S.W.2d 398, 400 (Tex. 1989) (trial court abused discretion by failing to apply proper legal standards to motion to disqualify counsel); *Eanes ISD v. Logue,* 712 S.W.2d 741, 742 (Tex.1986) (trial court abused discretion by erroneously finding constitutional violation).

*Walker,* at 839–40.

In applying the standard, the supreme court stated:

In determining whether the trial court abused its discretion in the present case, we treat the trial court's erroneous denial of the requested discovery on the sole basis of *Russell [v. Young,* 452 S.W.2d 434 (Tex.1970),] as a legal conclusion to be reviewed with limited deference to the trial court. This is consistent with our approach in previous mandamus proceedings arising out of the trial court's interpretation of legal rules. *Cf. Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 555 (Tex.1990); *Barnes v. Whitti[n]gton,* 751 S.W.2d 493, 495–96 (Tex.1988); *Terry v. Lawrence,* 700 S.W.2d 912, 913–14 (Tex. 1985). Under this analysis, the trial court's erroneous interpretation of the law constitutes a clear abuse of discretion.

*Walker* at 840.

Similarly, it is apparent that in *TransAmerican* the supreme court treated the erroneous imposition of a severe discovery sanction, in contravention of both rule 215's requirement that sanctions be just and the protection of the due process clause, as a legal conclusion also to be reviewed with limited deference to the trial court.

If the relator presents a record showing that discovery has been complied with, albeit after objections were overruled, then it

would be extremely difficult to conclude that the record demonstrates the type of behavior which warrants the striking of pleadings in keeping with due process of law under *TransAmerican.* However, if the record shows that the relator has refused to produce discovery material despite less severe sanctions having been imposed, then, even if we were to disagree with the trial court's action in striking pleadings, we would be hard pressed to find the trial court abused its discretion by not affording due process.

In cases such as the present one and *TransAmerican,* the point is not that a trial court may never impose the ultimate sanction of the "death penalty" (dismissal of pleadings); the point is that a trial court may not impose the severe sanction without first resorting to lesser sanctions unless there has been such flagrant bad faith or callous disregard for discovery that there exists a presumption that the claim or defense lacks merit, consistent with due process requirements.

Whether the reviewing court concludes the trial court abused its discretion in imposing the sanction, exceeded its discretion in imposing the sanction, had no discretion to impose the sanction, acted without guiding principles in imposing the sanction, violated a clear legal duty to impose only a just sanction, or imposed an unjust sanction is semantic. While shades of gray separate the various connotations of the different phrases, they all denote the same thing—the sanction was not "just" as that term is applied to sanctions that deprive a party of the opportunity to present its case.

Simply put, if a sanction is not just, a trial court may not impose it. It necessarily follows that a trial court abuses its discretion in doing so.

A review of some recent cases implementing the *TransAmerican* opinion is revealing.

In *Shell Western E & P v. Partida,* 823 S.W.2d 400 (Tex.App.—Corpus Christi 1992, orig. proceeding), the court of appeals conditionally granted the writ of mandamus ordering the trial court to vacate his order of sanctions. The appellate court stated that the trial court's order was an abuse of discretion, without elaboration as to what discretion the trial court had. *Id.* at 404. The basis for the appellate court's holding was that "[i]n this case, nothing justified the severe sanction assessed." *Id.* The court of appeals felt "compelled to caution against actions by attorneys on both sides which attempt to thwart a thorough presentation of a case through legal maneuvers and gamesmanship or by a trial judge whose patience wears thin." *Id.* at 405.

In *Tinsley v. Downey,* 822 S.W.2d 784 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding), the court of appeals ordered the trial court to withdraw his order striking expert witnesses. The court said that a sanction for discovery abuse should never be more severe than necessary. "Where less severe sanctions are possible, and would tend to promote compliance with the orderly trial of lawsuits, trial courts should apply the less severe sanctions." *Id.* at 787. The court found that the striking of witnesses was an abuse of discretion. The court further held that the offending party's conduct was not so offensive as to warrant the excessive sanction of the loss of expert witnesses, and that the punishment was more severe than necessary. *Id.*

In *McCoy v. Knowles,* 821 S.W.2d 282 (Tex.App.—Fort Worth 1991, no writ), the appellate court reversed the judgment based on a discovery abuse sanction of striking pleadings. The court found the sanction excessive, stating:

Although [McCoy's] responses to discovery were late and incomplete, the record does not show that he contemporaneously continued to obstinately disregard an obligation to answer despite court orders imposing lesser sanctions. Neither is there any suggestion that as a consequence of McCoy's discovery abuse, Knowles was irreversibly denied access to evidence or other discoverable matters. Further, there is no showing that McCoy's discovery abuse has caused Knowles injury that cannot be remedied,

such as loss of witness testimony caused by a postponed trial. *Id.* at 283.

In *Pelt v. Johnson*, 818 S.W.2d 212 (Tex. App.—Waco 1991, orig. proceeding), the court conditionally issued the writ of mandamus overturning an order sanctioning discovery abuse. In setting out the standard of review the court of appeals said that it must determine if the trial court acted without reference to any guiding rules and principles, it must determine if the act was arbitrary or unreasonable, and there is no abuse of discretion simply because the reviewing court might have decided a matter within the trial court's discretion in a different manner. *Id.* at 216. In holding that the district court abused its discretion, the court of appeals said, "We conclude that Relators were not guilty of the type of flagrant bad faith which justifies the death-penalty sanction. In short, we do not believe that the sanction was appropriate—the punishment did not fit the crime." *Id.* at 219 (citations omitted).

In the sample cases we have reviewed, the courts of appeals made a determination on their own as to whether the sanctions were just.

This court did the very same thing in *Welex v. Broom*, 823 S.W.2d 704 (Tex. App.—San Antonio 1992, writ requested). In an opinion authored by Justice Chapa, this court set aside an order granting a default judgment on liability as a discovery sanction. Justice Chapa wrote that "in the present case, as in *TransAmerican*, it appears lesser sanctions should have been imposed first." *Id.* at 710. Under the majority's rationale, it is difficult to see how this court did not substitute its judgment for the trial court in *Welex* when making that holding.

The majority attempts to distinguish *Welex* on the basis that it was a direct appeal instead of an original proceeding. The test for propriety of a discovery sanction which precludes a party from presenting its case is whether the trial court abused its discretion by entering an unjust sanction. There can be no difference between finding an abuse of discretion on review by direct appeal or in an original proceeding. Furthermore, such a sanction is either just or not, no matter if it is reviewed by this court on direct appeal or in an original proceeding. It is illogical to suggest that under the very same abuse of discretion test that is to be used on appeal or in a mandamus proceeding a reviewing court could conclude on direct appeal that "lesser sanctions should have been imposed first" but that the court concluding the same thing in a mandamus proceeding "substitutes its judgment for that of the trial court."

The majority points out that in *Welex* the trial on the merits had occurred, but in our case it has not taken place. However, this only goes to the issue of whether Hartford has an adequate remedy by appeal, an issue which has been resolved by *TransAmerican*. Certainly a sanction preventing a party from presenting its case may not be considered to be a just sanction before trial takes place, but unjust after trial.

The majority further asserts that in *Welex* the trial court did not have the opportunity to consider the guidelines set out in *TransAmerican*, whereas in the present case the trial court specifically stated it considered the *TransAmerican* principles.

However, in *Welex*, this court cited *Jaques v. Texas Employers' Ins. Ass'n*, 816 S.W.2d 129 (Tex.App.—Houston [1st Dist.] 1991, no writ), in support of the holding that lesser sanctions should have been imposed first. In *Jaques*, the appellant, an injured worker pursuing a workers' compensation claim, objected to interrogatories submitted by TEIA. In response to TEIA's motion to compel, the trial court ordered Jaques to answer the interrogatories within thirty days and to pay TEIA attorney's fees of $250. Jaques maintained his objections and did not answer the interrogatories. TEIA filed a motion for sanctions. The trial court ordered that Jaques' pleadings be stricken. The order signed by the trial court included a crossed-out alternative paragraph that would have ordered Jaques to pay additional attorney's fees and to answer the interrogatories within five days. The court of appeals noted that

the trial court considered lesser sanctions, but the judge purposely rejected this option. In reversing the judgment the appellate court held that lesser sanctions would have been effective and should have been used. *Id.* at 131. This authority relied on in *Welex* contradicts the majority's view that the key question is whether the trial court considered less severe sanctions.

Considering the principles and correctly applying them to the facts of a particular case are two different matters. For example, in *Walker,* the trial court considered *Russell,* but the court incorrectly failed to recognize that the facts of the case before it were distinguishable from *Russell.*

Here, the trial court considered *Trans-American,* but the court fell into error when it concluded that this case came within that category of cases where a party refuses to allow discovery despite the imposition of less severe sanctions so as to justify a presumption that the defenses lacked merit in accordance with due process of law.

We are not required to decide whether Hartford's actions warranted sanctions. What we must decide is whether its actions justified dismissal of Hartford's amended answer, which alleged its affirmative defenses. I have no quarrel with the factual rendition set out in the majority.[5] However, I part company with the trial court and the majority when reaching the legal conclusion that the facts warranted the severe sanction imposed. This is not a case of a continually recalcitrant litigant steadfastly refusing to comply with discovery despite court rulings. When Hartford's discovery objections were overruled, Hartford complied. It is significant that Flores received all of the sought-after discovery.

The majority sets out what it considers to be sufficient evidence to sustain the sanctions order. The majority notes that at the deposition Jones was repeatedly instructed by counsel not to answer questions. Surely the majority is not suggesting that certifying objected-to questions to the trial court is not proper procedure, even if the objections lack merit. In any event, even if the objections were so frivolous as to be abusive, the questions were answered after the trial court overruled Hartford's objections. Therefore, no presumption ever arose that the affirmative defenses lacked merit.

The majority goes into great detail about the statement of Flores' supervisor and other notes contained within the claim file. Although Hartford's claim file contained matters adverse to Hartford's affirmative defenses, that is no reason to unconstitutionally deny Hartford the opportunity to have its defenses decided on the merits.

It must be kept in mind that this was not a summary judgment on the merits of the affirmative defenses, rather this ruling effectively granted a default judgment on the affirmative defenses by sanction. Due process requires a hearing on the merits of the case, unless the offending party's refusal to produce material evidence creates a presumption, through a tacit admission, that the asserted defense lacks merit. *Insurance Corp. of Ireland v. Compagnie des Bauxites,* 102 S.Ct. at 2106.

The majority also points to the fact that Jones did not appear at her first scheduled deposition. Of course, failure to appear at a deposition was the basis for the sanction in *TransAmerican,* which the supreme court found was unjust.

---

5. However, I would add to the majority's rendition of the facts pertaining to reflection of the record number 4. At Jones' deposition, Flores' attorney asked her about discrepancies in the file she brought to the deposition and the copy of the file that was delivered to Flores. Particularly, counsel inquired about matters that were in the activity log of the original file but not in the copy turned over to Flores. After looking at the comparisons, Jones testified that these were not included in the copy. However, the copy of the file given to Flores is included in the record as Deposition Exhibit 6, and it clearly contains the allegedly deleted information.

Additionally, the majority refers to the amended answer as being "late filed," but it was not untimely filed. *See* TEX.R.CIV.P. 63, 70. The majority claims the "late filed" amended answer made it impossible for Flores to supplement interrogatories. *But see* TEX.R.CIV.P. 166b(6). More important, the trial court struck Hartford's amended answer as a sanction for discovery abuse, and not because it was filed in violation of rule 63.

The concurring opinion considers the trial court's action to be a limited one in which the court did impose a lesser sanction since it was only the first amended answer that was struck. Of course, the amended answer raised affirmative defenses rendered unavailable without a pleading to bring them into issue. The concurrence points out that Flores must still meet his burden of proof on the merits. The point of an affirmative defense is that even if the plaintiff meets his burden of proof on the merits, the defendant may still prevail or at least lessen the extent of the plaintiff's victory if the trier of fact finds merit in the affirmative defense. *TransAmerican* does not limit constitutional due process protection to the merits of only plaintiffs' pleadings. It is illogical reasoning to state that striking a pleading which asserts affirmative defenses is a "lesser sanction" under *TransAmerican* when *TransAmerican* discusses "very severe sanctions" which strike a party's pleading, thereby adjudicating the merits of a party's defenses. *TransAmerican* at 917–918. If a plaintiff alleges several causes of action, would the striking of one cause of action or claim be a lesser sanction taking the case outside the scope of *TransAmerican?* Under the concurrence's rationale it would.

The concurrence recognizes that it is an unusual case which justifies the imposition of the extreme death penalty sanction before utilizing lesser sanctions. The concurring opinion then states there is nothing in *TransAmerican* which prohibits such action if the record supports it. But, *TransAmerican* explicitly sets out what must be present in such an unusual case when discussing the constitutional due process limitations on sanctions which strike pleadings. Neither the majority nor the concurrence address how the present record supports the trial court's action as being consistent with the due process limitations.

The majority opinion will encourage sanctions gamesmanship and chill vigorous advocacy. Parties will try to win cases by moving for the striking of the other side's pleading, if the other side has unsuccessfully objected to discovery, regardless of whether discovery was complied with. An open season on those who object to discovery most certainly will follow the majority's imprimatur on death penalty sanctions in those situations, notwithstanding *TransAmerican*.

Despite the concurring opinion's implication to the contrary, this court's holding today strictly limits potential factual distinction in future cases concerning severe discovery sanctions. The only cases in which this court will set aside such sanctions will be those in which either the sanctioned party, plaintiff or defendant, did not engage in discovery abuse or the trial court did not consider less severe sanctions.

The sanction imposed by the trial court was excessive under the circumstances and violated Hartford's right to due process of law. Assuming without deciding that Hartford's actions were so frivolous or dilatory as to be abusive, the record indicates that lesser sanctions such as discovery costs and attorney fees stemming from Hartford's actions would have been appropriate, as in *TransAmerican*. *See Welex v. Broom,* 823 S.W.2d 704 (Tex.App.—San Antonio 1992, writ requested). The majority's conclusion, that such action by a reviewing court amounts to the improper substituting of that court's judgment for the trial court, cannot be reconciled with the cases previously cited in this dissent.

The order striking Hartford's amended answer was unjust. Therefore, the trial court abused its discretion in imposing that sanction.

In determining whether the order disbursing $10,000 to Flores' counsel was appropriate, the question is whether Hartford has an adequate remedy by appeal. *Braden v. Downey,* 811 S.W.2d 922 (Tex.1991). If not, the appropriate remedy is to direct the trial court to modify its order so payment of the money is deferred until final judgment is rendered. *Id.* at 930–31.

"[I]f a litigant contends that a monetary sanction award precludes access to the court, the district judge must either (1) provide that the sanction is payable only at a date that coincides with or follows entry of a final order terminating litigation; or

(2) makes express final written findings, after a prompt hearing, as to why the award does not have such a preclusive effect." *Id.* at 929.

In the case at hand, Hartford did not maintain in the trial court, and has not argued to this court, that the immediate payment of the monetary sanction would significantly impair its ability to continue with this litigation. Hartford argues only that the evidence does not show that the payment of the monetary sanction would not restrict its access to the court. I note that Hartford had the opportunity to present this contention to the trial court on reconsideration of the sanctions following the issuance of the *Braden* opinion. Hartford has failed to show that it has no adequate remedy at law with regard to the monetary sanctions.

Judge Abascal should vacate that portion of his order striking Hartford's amended answer. The writ of mandamus should issue only if he were to fail to comply. Because the majority opinion does not so order, I dissent.

REEVES, C.J., and PEEPLES, J., join in dissenting opinion.